MALEY-THOMPSON & MOFFETT CO. *v.* THOMAS FORMAN CO.

1. SALES—DELIVERY—PAYMENT—SELLER'S LIEN.

   If the seller lies by, making no complaint in a reasonable time after delivery of goods sold, he consents to the absolute transfer of the property and waives any right to retake the subject-matter for failure to make payment on the part of the buyer.

2. SAME.

   *Held,* that the seller could not reclaim property a year after delivery and after having refused to permit rejection of the goods, although the purchaser became insolvent.

Error to Wayne; Van Zile, J. Submitted November 25, 1913. (Docket No. 153.) Decided March 27, 1914. Rehearing denied June 4, 1914.

Trover by Maley-Thompson & Moffett Company against Thomas Forman Company for the conversion of a carload of lumber. Judgment for defendant. Plaintiff brings error. Affirmed.

*William Van Dyke* and *Standish Backus,* for appellant.

*Charles S. Hampton,* for appellee.

MOORE, J. This suit was commenced by declaration August 22, 1908. The declaration is in the usual form of trover, to recover for lumber which, it is agreed, was of the value of $878.41. The case was tried before the circuit judge; the facts being evidenced by a voluminous correspondence, and by stipulation between the attorneys.

The circuit judge filed elaborate findings of fact, and

rendered judgment in favor of the defendant.   The case is brought here by writ of error.

Counsel for appellant argue the case under the following heads:

(1) There was no sale by Turner Company.

(2) There was acceptance back by plaintiff before any innocent parties' rights intervened, without notice for value.

(3) Demand was unnecessary, as there was conversion before plaintiff brought trover.

We shall not attempt to follow this grouping in the disposition of the case.   The order for the lumber in controversy was placed by Turner Lumber Company, a Pittsburgh, Pa., corporation, with the plaintiff, a Cincinnati, Ohio, corporation, in March, 1907, the same to be shipped to Alliance, Ohio.   The order was a rush order, and was an acceptance of plaintiff's proposition to sell.   There was delay in filling this order; Turner Lumber Company urging haste, and the Maley-Thompson & Moffett Company making excuses.   On November 7, 1907, the lumber was shipped, and on the same day the plaintiff's bill for 19,035 feet of lumber, amounting to $956.75, was sent to the purchaser, the statement ending:   "Settlement in 10 days by cash less 2% of 60-day acceptance."

November 27, 1907, the Turner Lumber Company acknowledged the arrival of the lumber at Alliance, Ohio, and stated that their customer there had refused to take it on account of the delay, and asking for suggestions, and closing with the inquiry:

"Have you any market in Cincinnati for stock of this thickness and grade?"

An answer was sent to this letter November 29th, expressing regret that there was trouble with the customer, and saying:

"But we do not see wherein we are responsible, as we shipped this car at your request and having re-

ceived no intimation of cancellation, in fact received a request from you to hurry shipment of same just a short time before the car was shipped, we must ask you to accept the stock."

The following was wired to Turner Lumber Company:

"Railroad advises car oak at Alliance unclaimed we look to you for disposition.

"THE MALEY-THOMPSON & MOFFETT CO."

A reply was sent:

"December 4th, 1907.

"MALEY-THOMPSON & MOFFETT CO.,

"Cincinnati, Ohio.

"*Gentlemen:*

"We are in receipt of your telegram reading as follows: 'Railroad advises car oak at Alliance unclaimed we look to you for disposition.' We are endeavoring to make disposition of this car and hope to be successful in doing so in the next few days."

In the meantime the Turner Lumber Company offered to sell the lumber to R. J. Darnell, Incorporated, of Memphis, Tenn., who in turn offered to sell it to Thomas Forman Company of Detroit. On January 11, 1908, Turner Lumber Company offered to sell at a stated price the lumber to Darnell, Incorporated, and this offer was accepted, with instructions to "ship to us Detroit advise name of delivering line at destination." Thomas Forman Company accepted the offer of Darnell, Incorporated, and on January 15th Darnell, Incorporated, forwarded the invoice of the lumber, and the former, upon the arrival of the lumber, paid charges amounting to $210.35, and unloaded the lumber, and found it not up to the quality that had been ordered by the Turner Lumber Company and sold by them to Darnell, Incorporated, and by them in turn to the defendant.

The defendant wrote Darnell stating the situation, saying:

"We can use the 1st and 2nd at $50.00 as agreed, and the No. 1 Com at $36.50 per M. ft. f. o. b. Detroit, these being the prices at which we have just bought a very nice car of stock."

A copy of this letter was at once sent to A. M. Turner Lumber Company, who at once wrote as follows:

"Jan. 29, 1908.
"MALEY, THOMPSON & MOFFETT CO.,
    "Cincinnati, Ohio.
"*Gentlemen:*
"Referring to the carload of ⅝ in. quartered white oak which we purchased from you some time ago, beg to advise we succeeded in selling this car some time ago and had it diverted to Detroit.

"We sold this stock for a straight grade of 1st and 2nds but the stock had been turned down on account of quality as the report on this would indicate that about three-fifths of the stock is under grade. We will have to under the circumstances ask you to make other disposition of the car.
    "Yours very truly,
      "O. H. RECTANUS, Secretary."

The answer to this letter was as follows:

"Feb. 4/08.
"THE A. M. TURNER LUMBER CO.,
    "Pittsburgh, Pa.
"*Gentlemen:*
"We are in receipt of your favor of January 29th, and are certainly very much surprised at same.

"We beg to state that this stock was shipped several months ago and settlement is long past due and if there was any complaint you had to make, it should have been made long since. We will acknowledge no complaint, nor will we agree to take possession of the stock and we insist upon settlement of same without further delay. This matter has been dragging as long as we propose to permit it and unless we receive your settlement promptly, we will take steps to collect same.
    "Very truly yours,
  "THE MALEY-THOMPSON & MOFFETT CO."

The Turner Lumber Company replied to this, calling attention to the situation. A reply was sent as follows:

"Feb. 11/08.

"A. M. TURNER LUMBER CO.,
    "Pittsburgh, Pa.
"*Gentlemen:*
"We are in receipt of your favor of the 5th again referring to the car of ⅝ in. quartered white oak, and we can only repeat what we stated in our former letter and that is, that it was not our fault that this report was not sent to you earlier and we certainly could not consider a proposition of this kind after you have held the stock for months and we will not take possession of the stock nor will we make any allowance, but must insist upon payment of same, or we will take steps to collect it if we do not receive your cheque promptly.

"This matter has now been dragging as long as we will permit it, and we shall expect to hear from you with settlement immediately."

On the 18th, the same position was repeated by the plaintiff. The letter closing:

"We have nothing further to add to our former correspondence regarding this matter and will now proceed to take steps to collect same, as the account is long past due."

On April 15, 1908, Darnell, Incorporated, wrote Turner Lumber Company:

"We purchased this lumber from you in good faith and shipped it to our customer who after his inspection found it unsatisfactory. It was again inspected by an inspector of the National Hardwood Lumber Association on which inspection we are prepared to settle with you.    *    *    *
"We must insist that this matter be closed up without further delay, and we may say to you in advance that we do not propose to surrender this lumber to either you or your shipper."

On April 18, 1908, Thomas Forman Company wrote Darnell, Incorporated, substantially the same.

The following appears in the stipulation:

"Subject to the objection of the plaintiff that the same is irrelevant, incompetent, and immaterial, it is admitted that in the spring of the year 1908 the said A. M. Turner Lumber Company of Pittsburgh, Pa., became involved in financial difficulties, and was, some time during the month of July, 1908, forced into bankruptcy."

On May 6, 1908, the plaintiff company wrote defendant:

"We have further notified R. J. Darnell that we only recognize the A. M. Turner Lumber Company in this transaction and as the A. M. Turner Lumber Company has turned the car back to us, that we will take possession of same."

On May 8th, Darnell, Incorporated, wrote defendant they should insist upon payment to them, as they had made the sale to the defendant, and they would assume any burden. Defendant shortly after paid Darnell, Incorporated, and, as before stated, this suit was brought August 22, 1908.

In *Frech* v. *Lewis*, 218 Pa. 141 (67 Atl. 45, 11 L. R. A. [N. S.] 948, 120 Am. St. Rep. 864, 11 Am. & Eng. Ann. Cas. 545), in disposing of the case the court said:

"The settled doctrine of our cases is to the effect that, where the contract of sale provides for payment of the purchase price on delivery of the articles sold, and the seller delivers the goods but the buyer fails to pay, the right of property does not pass to the buyer with the possession, but remains with the seller, who may at his option reclaim the goods. In some jurisdictions the right of property is held to pass with the delivery, unless at the time the right to retake is expressly declared by the seller. We have not gone so far. Our cases proceed on the theory that until payment has been made, or waived, the contract remains executory, and that delivery in such case is not a completion of the contract, except as an intention to so regard it is expressly declared or can fairly be in-

ferred from the circumstances attending. Possession, however, having passed, and the buyer by the act of the seller having been invested with the indicia of ownership, the policy of our law requires that this situation—the possession in one and the right of property in another—shall continue no longer than is necessary to enable the seller to recover the goods with which he has parted. The law gives the seller the right in such case to reclaim his goods, but he must do so promptly, otherwise he will be held to have waived his right, and can only thereafter look to the buyer for the price. The question the present case suggests is: When does this inference of waiver arise? Our authorities admit of but one answer: Except when delayed by trick or artifice, the assertion of the right to reclaim the property must follow immediately upon the buyer's default. This does not mean that the seller must *eo instante* begin legal proceedings to recover the goods; but it does mean that the seller, when he discovers that his delivery is not followed by payment, as he had the right to expect, is at once put to his election whether he will waive the condition as to payment and allow the delivery to become absolute, or retake property, and that he is to allow no unnecessary delay in making his choice. The object of the law is not to multiply his remedies because of his disappointment. He may not continue to hold his right to the goods, and at the same time hold the buyer as his creditor; one or the other he must relinquish, and do it promptly, or the law will forfeit his right to elect. Continued acquiescence in the buyer's possession of the goods will be taken as a choice on his part to regard the delivery as absolute, notwithstanding the buyer's default. The policy of the law, in requiring promptitude in the assertion of continued ownership of the goods, could easily be vindicated, were it necessary. It answers every purpose here to show that the law requires it. In *Leedom* v. *Phillips*, 1 Yeates, 527, it is said:

"'When the parties specially agree, it is obvious that the vendor may, by his contract, renounce the benefit of the conditions stipulated, and trust to the good faith of the vendee for a future performance on his part. If one sells goods for cash, and the vendee takes them away without payment of the money,

the vendor should immediately reclaim them by pursuing the party, and he may justify the retaking of them by force.'

"This was quoted approvingly in *Bowen* v. *Burk*, 13 Pa. 146; and it was there added that, 'where he (the seller) lies by, and makes no complaint in a reasonable time, he consents to the absolute transfer of the property, and the contract is consequently complete against all the world.' In *Backentoss* v. *Speicher*, 31 Pa. 324, reference is made to the case last above cited. What we have quoted from it was there approved, and the necessity for an immediate reclamation of the goods was emphasized. It is there said:

"'This is the principle that is decisive against the present plaintiff. A sale of goods for cash is, strictly speaking, a sale on condition. The contract is. *do ut des*. The condition is more imperative than such as was in this case, but for that reason less easily waived; and yet if the vendor acquiesced in a possession obtained in disregard of the condition, he waives it; and though he may recover the price by action, he cannot recover the goods in specie. * * * When the plaintiff found his condition disregarded, he should have promptly reclaimed the goods.'

"*Mackaness* v. *Long*, 85 Pa. 158, is another recognition of the same doctrine, that unless reclamation of the property be made immediately, the title passes to the buyer. These cases and others that might be cited, following the lead of *Leedom* v. *Phillips*, 1 Yeates, 527, all hold that the duty is upon the seller, if he would retain his right to the property, to proceed promptly, and we know of no case in which a contrary doctrine is asserted. In some cases the expression 'within a reasonable time' is used where the right to reclaim is referred to; but this expression suggests no departure from the rule as declared in *Leedom* v. *Phillips, supra*. By reasonable time is to be understood such promptitude as the situation of the parties and the circumstances of the case will allow. It never means an indulgence in unnecessary delay, or in a delay occasioned by the vain hope and fruitless effort to obtain the money from the defaulting buyer. When the delay is to be accounted for by the latter consideration, it is accepted as an acquiescence in the delivery and the acceptance of the buyer as a debtor."

Applying these principles of law, we think it clear that plaintiff did not act within reasonable time under any of the decisions, and therefore had no right of recovery against defendant.

Judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.