**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Clifford W. Taylor     Michael F. Cavanagh
                       Elizabeth A. Weaver
                       Marilyn Kelly
                       Maura D. Corrigan
                       Robert P. Young, Jr.
                       Stephen J. Markman

FILED JULY 19, 2006

ANN COBLENTZ, LEE COBLENTZ,
JOHN LEWANDOWSKI, and
DEBORAH LEWANDOWSKI,

       Plaintiffs-Appellants,

v                                                        No.  127715

CITY OF NOVI,

       Defendant-Appellee.

BEFORE THE ENTIRE BENCH

KELLY, J.

This case asks us to determine if the trial court appropriately found requested documents exempt from disclosure under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*.  We address also whether it was appropriate for defendant to charge fees to plaintiffs for the work of defendant's attorney in retrieving and separating documents plaintiffs sought under the act.

This case revolves around an underlying settlement agreement between defendant and a third party.  Plaintiffs filed a FOIA request for documents associated with the agreement.  Requested were "site plans" and "global readings"

on real property, all exhibits to the agreement, including certain exhibits listed as intentionally deleted, and side agreements or letters related to the agreement.

The Court of Appeals affirmed the trial court's decision that the requested documents were exempt from disclosure. *Coblentz v Novi*, 264 Mich App 450; 691 NW2d 22 (2004). We affirm in part and reverse in part that decision. We conclude that the Court of Appeals appropriately affirmed the grant of summary disposition to defendant on plaintiffs' request for "site plans" and "global readings." But the Court of Appeals erred in affirming summary disposition regarding the request for all exhibits to the underlying settlement agreement, including the intentionally deleted exhibits. These exhibits were not exempt from disclosure and were sufficiently identified in the FOIA request.

The Court of Appeals also erred in affirming summary disposition for defendant on the requested "side agreements" to the settlement agreement. These items were not exempt because defendant failed to comply with MCL 15.243(1)(f)(*iii*). Finally, the Court of Appeals erred in finding appropriate the fees that defendant charged for its attorney's work in separating documents. The attorney in question was not an employee of defendant. Therefore, we remand this case to the trial court for entry of a judgment compelling disclosure consistent with this opinion.

I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

In a separate civil action against defendant, Sandstone Associates Limited Partnership-A (Sandstone) obtained a judgment that totaled tens of millions of

2

dollars, including costs, interest, and attorney fees. Sandstone and defendant then entered into an agreement in which defendant waived its appellate rights and Sandstone received real property rather than the money judgment. The major component of the agreement called for defendant to turn over 75 "net usable" acres to Sandstone for development.

The property had previously been set aside as parkland. It is adjacent to property owned by plaintiffs. Some of the property carried deed restrictions, including possible reciprocal negative easements.[1] Plaintiffs' properties contained the same deed restrictions. The settlement agreement required defendant to arrange for the removal of the deed restrictions on its property and on plaintiffs' property. It was agreed that, if defendant failed, it would convey additional property to Sandstone. In an effort to remove the restrictions, defendant contacted plaintiffs.

---

[1] This Court has provided the following definition and example of a reciprocal negative easement:

> There must have been a common owner of the related parcels of land, and in his various grants of the lots he must have included some restriction, either affirmative or negative, for the benefit of the land retained, evidencing a scheme or intent that the entire tract should be similarly treated. Once the plan is effectively put into operation, the burden he has placed upon the land conveyed is by operation of law reciprocally placed upon the land retained. In this way those who have purchased in reliance upon this particular restriction will be assured that the plan will be *completely* achieved. [*Lanski v Montealegre*, 361 Mich 44, 47; 104 NW2d 772 (1960) (emphasis in original).]

3

Plaintiffs retained counsel who filed a FOIA request with defendant, seeking:

> 1. All exhibits, including but not limited to exhibits G, T, U, V, W, AA, BB, GG, MM, NN, PP, for the Agreement for Entry of Consent Judgment dated June 25, 2002 between Sandstone and the City of Novi;
>
> 2. Any and all site plans for Sandstone regarding the 75 dedicated acres; and . . . .

Defendant's attorney responded to these requests by writing:

> 1. Exhibits G, T, U, V, W, AA, BB, GG, MM, NN, PP: I have advised you by phone and letter that there are no such exhibits. The reference in the index, indicating that they were intentionally deleted, is merely to clarify for the reader that such exhibits have not been lost or detached from the Agreement. These exhibits do not exist, and never existed.
>
> 2. Site Plan: I have also advised you by phone and letter that a site plan or concept plan for the 75 acres does not exist. It has never existed. I do not know how [to] provide any further explanation.

Plaintiffs then informally requested all side agreements to the Sandstone settlement agreement and the "global readings." Defendant's attorney responded that he did not know what "global" meant. With regard to the side agreements, he stated that he assumed that this meant the "side letters" to the Sandstone agreement. He indicated that he was attempting to learn from Sandstone's counsel which of the side letters were submitted with an understanding of confidentiality.

Plaintiffs next filed a second FOIA request. Among the items sought were:

> 1. Any and all side agreements entered into between the City of Novi and Sandstone and/or its attorneys or representatives;

4

2. Global readings on "extra land"; global positioning satellite (GPS) readings on "extra land";

3. Settlement agreements, releases, copies of drafts in settlement of the insurance cases relating to this property[.]

After plaintiffs' second FOIA request, defendant began to negotiate with Sandstone for release of the side agreements. Sandstone initially stated that none could be released, but later agreed to release five of the seven side letters.

In response to this FOIA request, defendant told plaintiffs that global or GPS readings did not exist. It also refused to release the two remaining side agreements, stating:

> The request is denied with regard to two documents representing commercial and/or financial information voluntarily submitted to the City of Novi for use in developing governmental policy . . . as contemplated and required under MCL 15.243(g) [sic, (1)(f)].

Plaintiffs filed a complaint in the circuit court seeking production of all intentionally deleted exhibits. Plaintiffs claimed that they had located one of the exhibits, exhibit AA, despite the fact that defendant contended that it never existed. They also asked the court to order production of global readings, site plans, and all side agreements.

Defendant filed a motion for summary disposition before the close of discovery. Attached was an affidavit from its mayor, Richard Clark. Clark stated that, as of the date of the affidavit, Sandstone had submitted no site plans for the 75 acres. He also affirmed that no "global readings" or GPS readings existed in

5

connection with the Sandstone settlement agreement. Plaintiffs responded, but did not attach any documentary evidence rebutting Clark's affidavit.

The court granted defendant's motion in part. Regarding the site plans and global readings, it found, on the basis of Clark's affidavit, that none existed. It concluded that further depositions of other city officials on the topic would be duplicative. The circuit court denied defendant's request for summary disposition on the fee issue pending further hearings. It also deferred ruling on the side agreements until it could make an in camera review. With respect to the intentionally deleted exhibits, it found them irrelevant and granted summary disposition for defendant.

Following its review of the side agreements that defendant claimed were exempt, the court found that defendant properly complied with the requirements of MCL 15.243(1)(f). The side letters, it found, fell within the governmental policy exemption of FOIA because they helped to facilitate the Sandstone agreement. Thus, it granted summary disposition to defendant.

The trial court then turned to the appropriateness of the fees for its attorney that defendant charged to plaintiffs. Defendant contended that the fees were appropriate because defendant's attorney was the lowest paid employee who could separate the exempt side letters from the nonexempt letters. The court granted summary disposition to defendant on this issue. It found that the attorney was defendant's employee and concluded that the fees were appropriate under MCL 15.234. In the same order, the court denied plaintiffs' motion for reconsideration.

On plaintiffs' appeal, the Court of Appeals concluded that it was not appropriate for the lower court to grant summary disposition concerning the intentionally deleted exhibits on the basis of relevance. But it affirmed the decision on alternative grounds, concluding that the intentionally deleted exhibits were not part of the final settlement agreement. It based its conclusion on the fact that these exhibits were listed in the agreement with the words "INTENTIONAL DELETION" written next to them. *Coblentz*, 264 Mich App 453-454.

Regarding the global readings and site plans, the Court of Appeals found that summary disposition was appropriate because of Clark's affidavit and plaintiffs' failure to offer factual support for their existence. It also concluded that summary disposition was appropriate despite the fact that discovery had not been concluded. The Court opined that it was unlikely that further discovery would provide the factual support necessary. *Id.* at 454-457.

It found that the two side agreements were exempt from disclosure. Specifically, it concluded that defendant adequately complied with FOIA's requirement that it place a description of the exempt material in a central location within a reasonable time. This is despite the fact that defendant did not file the description until after plaintiffs had made their FOIA requests and until five months after Sandstone had submitted the documents. The Court of Appeals found this reasonable because negotiations had continued between defendant and Sandstone over the deed restrictions. *Id.* at 458-459.

Finally, the Court of Appeals found the fees charged for the work of defendant's attorney appropriate. It concluded that defendant's attorney met the dictionary definition of an employee. And it found that he was the lowest paid employee who could handle the FOIA request. *Id*. at 460-461.

Plaintiffs sought, and we subsequently granted, leave to appeal. 474 Mich 886 (2005).

## II. STANDARD OF REVIEW

We review questions of statutory interpretation and the proper application of statutes using a de novo standard. *Adams Outdoor Advertising, Inc v City of Holland*, 463 Mich 675, 681; 625 NW2d 377 (2001). We review rulings on motions for summary disposition using the de novo standard as well. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Summary disposition was granted here under MCR 2.116(C)(10).[2] In reviewing a ruling made under this court rule, a court tests the factual support by reviewing the documentary evidence submitted by the parties. *Spiek*, 456 Mich 337. We review the evidence and all legitimate inferences in the light most favorable to the

---

[2] MCR 2.116(C)(10) provides:

Grounds. The motion may be based on one or more of these grounds, and must specify the grounds on which it is based:

* * *

(10) Except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law.

nonmoving party. *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

The standard of review for FOIA cases was clarified this term in *Herald Co, Inc v Eastern Michigan Univ Bd of Regents*, ___ Mich ___; ___ NW2d ___ (Docket No. 128263, decided July 19, 2006). The Court stated:

> We continue to hold that the clear error standard of review is appropriate where the parties challenge the *factual findings* of the trial court. However, where the parties do not dispute the underlying facts but rather challenge the trial court's exercise of discretion, we hold that an appellate court must review that determination for an abuse of discretion, which this Court now defines as a determination that is outside the principled range of outcomes. [*Id*., slip op at 2-3 (emphasis in original).]

The determination whether a description of material claimed to be exempt under MCL 15.243(1)(f) was recorded in a central location within a reasonable time after submission is a discretionary one. Therefore, the trial court's decision on the defendant's compliance with the requirements of MCL 15.243(1)(f)(*iii*) is reviewed for an abuse of discretion.

III. SITE PLANS AND GLOBAL READINGS

In response to plaintiffs' request for site plans and global readings, defendant provided Clark's affidavit claiming that the documents did not exist. If a record does not exist, it cannot be produced. Given that defendant denied the existence of the records and that it provided supporting documentation for its

9

position, the burden shifted to plaintiffs to produce documentation to counter defendant's affidavit.

MCR 2.116(G)(4) provides:

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

Under this court rule, a plaintiff cannot rest solely on its complaint. Affidavits, pleadings, depositions, admissions, or other documentary evidence must be offered to survive summary disposition. See *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). In this case, plaintiffs failed to provide such documentary evidence.

Regarding the global readings, plaintiffs admit that they are unsure what they were seeking. They base their request on a handwritten note contained in one of the drafts of the Sandstone agreement. The note is in the margin and merely states "global." Plaintiffs concede that they were guessing at the meaning of the word. Plaintiffs offer no documentary evidence showing that their guess was well-founded. Therefore, the trial court properly granted summary disposition. MCR 2.116(G)(4).

The site plans present a similar situation. While everyone agrees that, eventually, site plans for the development must be filed with defendant, the

question is whether they had been filed at the time of plaintiffs' FOIA request. Again, defendant provided Clark's affidavit to support its contention that site plans had not been filed with the city, and plaintiffs offered nothing to contradict this point. They did not even demonstrate that a local ordinance required Sandstone to file a site plan by the date of the FOIA request.[3] Without factual support to contradict Clark's affidavit, the trial court properly granted summary disposition pursuant to MCR 2.116(C)(10).

Plaintiffs complain that summary disposition was premature because discovery had not been completed. They assert that they were unable to depose defendant's employees, including Clark, to obtain the information necessary to counter defendant's summary disposition motion. Such situations are controlled by MCR 2.116(H), which provides:

> Affidavits Unavailable.
>
> (1) A party may show by affidavit that the facts necessary to support the party's position cannot be presented because the facts are known only to persons whose affidavits the party cannot procure. The affidavit must
>
> (a) name these persons and state why their testimony cannot be procured, and
>
> (b) state the nature of the probable testimony of these persons and the reason for the party's belief that these persons would testify to those facts.

---

[3] Photographs suggested that Sandstone removed trees and graded the 75 acres at some point. But this is not evidence that defendant had site plans in its possession at the time of the FOIA request. Plaintiffs point to nothing to show that site plans were legally required to be filed before this activity could occur.

11

(2) When this kind of affidavit is filed, the court may enter an appropriate order, including an order

(a) denying the motion, or

(b) allowing additional time to permit the affidavit to be supported by further affidavits, or by depositions, answers to interrogatories, or other discovery.

In this case, plaintiffs did not comply with MCR 2.116(H). They did not offer the required affidavits of probable testimony to support their contentions. Therefore, they cannot complain that discovery was prematurely ended.

Given that plaintiffs did not counter defendant's documentary evidence as required by MCR 2.116(G)(4) or MCR 2.116(H), the trial court appropriately granted summary disposition to defendant under MCR 2.116(C)(10). Accordingly, we affirm the Court of Appeals decision with regard to plaintiffs' request for global readings and site plans.

IV. THE INTENTIONALLY DELETED EXHIBITS

In the final draft of the Sandstone agreement, the table of contents listed and lettered the exhibits. Next to some of the letters, the words "INTENTIONAL DELETION" were inserted. In their FOIA request, plaintiffs asked for all exhibits to the Sandstone agreement, including the intentionally deleted exhibits. Defendant argues that the FOIA request was not sufficiently clear. Much of this argument is based on defendant's contention that there was only one final agreement and that plaintiffs requested the exhibits to that final agreement.

MCL 15.233(1) states, in relevant part:

12

Except as expressly provided in section 13 [exemptions from disclosure], upon providing a public body's FOIA coordinator with a written request *that describes a public record sufficiently to enable the public body to find the public record*, a person has a right to inspect, copy, or receive copies of the requested public record of the public body. [Emphasis added.]

Defendant never claimed, and still does not claim, that it does not know what plaintiffs seek. But, focusing on its view of what constituted the final agreement, it concludes that the requested exhibits either do not exist or that defendant is not required to produce them. It claims that only the final agreement is discoverable and that the requested exhibits were not part of it.

Even if the exhibits were not part of the final settlement agreement, defendant had to disclose them. The FOIA request sufficiently identified them. MCL 15.233(1). Defendant does not contend that it did not know what documents plaintiffs were requesting. Because plaintiffs' description was sufficient to enable defendant to identify the documents, MCL 15.233(1) required defendant to produce them regardless of whether they were part of the final agreement.

Defendant's restrictive reading of the FOIA request is not consistent with the language of the act. MCL 15.233(1). All that a request must accomplish is to describe the record "sufficiently" to enable the public body to identify it. Because defendant acknowledges that the FOIA request did that much, the request was adequate.

The Legislature chose not to require an exacting standard in MCL 15.233(1). It could have required a "written request that describes a public record

13

precisely or fully." But, instead, the Legislature chose to use the lesser standard of "sufficiently." The words chosen by the Legislature are presumed intentional. We will not speculate that it used one word when it meant another. *Detroit v Redford Twp*, 253 Mich 453, 456; 235 NW 217 (1931).

Moreover, requiring only a description sufficient to permit identification of the requested items is consistent with the goals and intent of the Legislature in enacting FOIA. It is a prodisclosure act. *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991). All public records are subject to full disclosure unless they are clearly exempt. *Id*. If a request is "sufficient" to allow the public body to find a nonexempt record, the record must be disclosed. MCL 15.233(1).

Plaintiffs' request satisfies this requirement. It specifically listed the intentionally deleted exhibits by letter, G, T, U, V, W, AA, BB, GG, MM, NN, and PP. Defendant's response demonstrates that plaintiffs' description was adequate because it also listed these exhibits by letter. It is irrelevant that defendant believed these exhibits not to be part of the final agreement. Plaintiffs' request provided defendant enough information for it to understand what documents plaintiffs wished to review.

A FOIA request must be fulfilled unless MCL 15.243 lists an applicable specific exemption. MCL 15.233(1). Defendant points to no exemption applicable to the intentionally deleted exhibits. Therefore, the trial court erred in granting summary disposition to defendant, and the Court of Appeals erred in

14

affirming that decision.  MCL 15.233(1) required the trial court to order defendant

to turn over the intentionally deleted exhibits.

V.  THE SIDE AGREEMENTS OR SIDE LETTERS

A.  THE SIDE LETTERS ARE NOT EXEMPT FROM DISCLOSURE

The trial court and the Court of Appeals found two of the side letters

exempt from disclosure pursuant to MCL 15.243(1)(f).  That provision reads:

> A public body may exempt from disclosure as a public record under this act any of the following:
>
> *  *  *
>
> (f) Trade secrets or commercial or financial information voluntarily provided to an agency for use in developing governmental policy if:
>
> (*i*) The information is submitted upon a promise of confidentiality by the public body.
>
> (*ii*) The promise of confidentiality is authorized by the chief administrative officer of the public body or by an elected official at the time the promise is made.
>
> (*iii*) A description of the information is recorded by the public body within a reasonable time after it has been submitted, maintained in a central place within the public body, and made available to a person upon request.  This subdivision does not apply to information submitted as required by law or as a condition of receiving a governmental contract, license, or other benefit.

Because FOIA is a prodisclosure act,[4] the public agency bears the burden of

proving that an exemption applies.  MCL 15.240(4).  In this case, defendant did

_____

[4] *Swickard*, 438 Mich 544.

15

not carry that burden. Because it failed to meet the requirements of MCL 15.243(1)(f)(*iii*), the side letters were not exempt.

### B. DEFENDANT OFFERED NO LEGAL JUSTIFICATION FOR THE DELAY IN THIS CASE

We hold that the trial court abused its discretion in finding that defendant recorded a description of the side letters within a reasonable time after they were submitted to defendant. The proffered reason for the delay, ongoing negotiations between defendant and Sandstone to secure the public release of the letters, is a consideration irrelevant to the recording requirements of MCL 15.243(1)(f)(*iii*).

MCL 15.243(1)(f)(*iii*) requires a public body to record a description of material claimed to be exempt within a reasonable time after its submission to the body. If it fails to comply with this requirement, the material is not exempt. MCL 15.243(1)(f). Whether the time the public body takes to record a description of the material is reasonable is measured from the date the material is submitted. It is not measured from the date the parties designate it as confidential. Because reasonableness is a discretionary determination, we review the trial court's finding for an abuse of discretion. A court abuses its discretion if its determination falls beyond the principled range of outcomes. *Herald*, ___ Mich ___, slip op at 3.

In this case, the side letters were sent to defendant between June and July 2002. Defendant did not record a description of them until November 26, 2002, several weeks after plaintiffs' November 1, 2002, FOIA request. The question, then, is whether the trial court abused its discretion when it found that this four- to

16

five-month interval was reasonable. Defendant argues that the delay was reasonable because, in the intervening months, defendant negotiated with Sandstone to determine which of the seven side letters it could publicly release. Defendant contends that, had it immediately recorded a description of the letters and asserted a FOIA exemption, Sandstone would have been discouraged from authorizing the letters' public disclosure later. It argues that negotiations with Sandstone to disclose the letters would have been rendered futile.

We reject the argument that defendant's negotiations with Sandstone made the delay reasonable and hold that the trial court abused its discretion when it found that defendant complied with MCL 15.243(1)(f)(*iii*). Defendant's proffered reason cannot justify *any* delay in meeting the filing requirement. However inconvenient the recording requirement may have been to defendant and Sandstone, defendant was still required to comply with the provisions of MCL 15.243(1)(f). This exemption is intended to provide notice to the public that a public body possesses trade secrets, commercial information, or financial information submitted to it for use in developing governmental policy.

MCL 15.243(1)(f)(*iii*) describes how those documents must be made available for public inspection. Only by the fortuity of plaintiffs' ongoing negotiations with defendant regarding the removal of deed restrictions from plaintiffs' property did plaintiffs become aware of the side letters. Otherwise, plaintiffs would never have known or suspected that they existed. Defendant's

17

rationale fails to explain how a requesting party could seek disclosure of a document of which it was unaware.

Were we to accept defendant's rationale, a public body could knowingly possess such confidential information for extended periods without providing any notice to the public that the information exists. This would defeat the purpose of the recording requirements expressed clearly in MCL 15.243(1)(f). Therefore, whether defendant could later secure Sandstone's permission to release the side letters is a consideration not legally relevant to its statutory obligation to record a description of the letters. It cannot be interpreted as a basis for finding that defendant filed a description within a "reasonable time."

Justice Corrigan's dissent argues that the unique facts of this case warranted the lengthy delay and that the trial court's discretionary determination fell within the principled range of outcomes. It misses the point that defendant's justification for the delay is legally irrelevant. Defendant bears the burden of qualifying the side letters as exempt under MCL 15.243(1)(f). Therefore, defendant must prove that the four- to five-month delay in recording was a "reasonable time." It is true, as Justice Corrigan contends, that the permissible time period for filing can vary. However, we do not need to pinpoint a general rule concerning what length of time would have been reasonable in this appeal because no valid reason was offered for the delay. We conclude simply that defendant's justification for the four- to five-month delay is legally irrelevant in view of the notice requirements set forth in MCL 15.243(1)(f)(*iii*). Therefore, the

18

trial court's finding that this interval was reasonable falls beyond the principled range of outcomes.

Accordingly, we hold that the trial court abused its discretion in finding that the delay was reasonable. Because defendant failed to comply with MCL 15.243(1)(f)(*iii*), the side letters are not exempt.[5]

VI. THE AVAILABILITY OF FEES FOR THE WORK OF DEFENDANT'S ATTORNEY

The lower courts erred in allowing defendant to charge plaintiffs for the work of defendant's attorney in locating the two allegedly exempt letters and separating them from the nonexempt material. MCL 15.234(1) provides, in part:

> A public body may charge a fee for a public record search, the necessary copying of a public record for inspection, or for providing a copy of a public record. Subject to subsections (3) and (4), the fee shall be limited to actual mailing costs, and to the actual incremental cost of duplication or publication including labor, the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information as provided in section 14.

MCL 15.234(3) describes how the public body may calculate the cost of producing FOIA documents. It provides, in part:

> In calculating the cost of labor incurred in duplication and mailing and the cost of examination, review, separation, and deletion under subsection (1), a public body may not charge more than the hourly wage of the lowest paid public body employee capable of retrieving the information necessary to comply with a request under this act.

---

[5] We note that plaintiffs raised challenges in this case under the other two sections of this exemption, MCL 15.243(1)(f)(*i*) and (*ii*). Because defendant failed to comply with MCL 15.243(1)(f)(*iii*), we need not reach those claims. Therefore, we take no position on Justice Corrigan's discussion of "governmental policy."

19

Pursuant to this statute, the public body may charge the rate of the lowest paid *public body employee* capable of retrieving the information. While the lower courts attempted to apply the language of the statute, they failed to distinguish between an employee and an independent contractor. MCL 15.234(3) allows the public body to charge for an employee's actions; it does not mention independent contractors. Therefore, to properly determine whether charges are appropriate, a court must resolve whether the person who examined the records is an employee or an independent contractor.

Although we have applied the economic realities test most often in the workers' compensation field, we conclude that it is instructive here. The test is a useful tool for discerning whether an employee-employer relationship exists. See *Clark v United Technologies Automotive Inc*, 459 Mich 681, 687; 594 NW2d 447 (1999). The test includes but is not limited to the following factors:

> "First, what liability, if any, does the employer incur in the event of the termination of the relationship at will?
>
> "Second, is the work being performed an integral part of the employer's business which contributes to the accomplishment of a common objective?
>
> "Third, is the position or job of such a nature that the employee primarily depends upon the emolument for payment of his living expenses?
>
> "Fourth, does the employee furnish his own equipment and materials?
>
> "Fifth, does the individual seeking employment hold himself out to the public as one ready and able to perform tasks of a given nature?

20

"Sixth, is the work or the undertaking in question customarily performed by an individual as an independent contractor?

"Seventh, control, although abandoned as an exclusive criterion upon which the relationship can be determined, is a factor to be considered along with payment of wages, maintenance of discipline and the right to engage or discharge employees.

"Eighth, weight should be given to those factors which will most favorably effectuate the objectives of the statute." [*Hoste v Shanty Creek Mgt*, *Inc*, 459 Mich 561, 568 n 6; 592 NW2d 360 (1999), quoting *McKissic v Bodine*, 42 Mich App 203, 208-209; 201 NW2d 333 (1972); see also *Askew v Macomber*, 398 Mich 212, 217-218; 247 NW2d 288 (1976), and *Schulte v American Box Board Co*, 358 Mich 21, 32-32; 99 NW2d 367 (1959) (Smith, J., concurring).]

No single factor is controlling when applying the test. *Clark,* 459 Mich 689.

In this case, defendant's attorney did not receive a paycheck or other employee benefits from defendant. The record reflects that the attorney was employed by a law firm that defendant retained as city attorney. The attorney acted as the lead attorney for the firm in that capacity. His social security and other employment benefits were paid by his law firm. Defendant did not directly pay the attorney for his services. Rather, defendant paid the law firm, which, in turn, paid the attorney.

The law firm provided the material and equipment necessary for the attorney to perform services for defendant. The attorney did not work exclusively for defendant, but acted as the attorney for other municipalities as well. There was no indication that the attorney was at all dependent on defendant for his living expenses. It appears that the attorney's law firm maintained control over the

21

attorney. Finally, defendant had no liability for the attorney in the event that his association with defendant was terminated

This is the classic example of an independent contractor. The attorney was the employee of the law firm. He and the law firm acted as independent contractors for defendant. Because MCL 15.234(3) does not mention independent contractors, defendant was not entitled to charge for the attorney's work.

FOIA allows public bodies to charge a requesting party only for employees' labor. MCL 15.234(3). Because the attorney who examined and separated the side letters was not defendant's employee, the lower courts erred in allowing defendant to charge plaintiffs under MCL 15.234(3) for the attorney's work.

## VII. CONCLUSION

We affirm the part of the Court of Appeals decision that held that defendant was not required by FOIA to produce documents regarding global readings and site plans. Plaintiffs did not, as required by MCR 2.116(G)(4), counter defendant's affidavit, and they did not demonstrate, pursuant to MCR 2.116(H), that further discovery would disclose such documents. Therefore, the trial court properly granted summary disposition to defendant on this issue.

We reverse the part of the Court of Appeals decision regarding the intentionally deleted exhibits. Plaintiffs' request provided defendant sufficient information for defendant to know which documents plaintiffs wished to review.

22

Because no exemption from disclosure applied, MCL 15.233(1) required the trial court to order defendant to turn over the intentionally deleted exhibits.

We also reverse the part of the Court of Appeals decision regarding the two side letters that defendant claimed were exempt. Defendant failed to comply with MCL 15.243(1)(f)(*iii*). It did not place a description of the material in a central location within a reasonable time of submission. This failure eliminates the side letters from being exempt.

Finally, we reverse the part of the decision affirming the allowance of fees for the work of defendant's attorney. The attorney was an independent contractor. The lower courts erred in failing to note the legal distinction between employees and independent contractors. MCL 15.234(3) allows recovery for the costs associated only with employees.

We remand this case to the trial court for entry of a judgment compelling disclosure consistent with this opinion.

> Marilyn Kelly
> Clifford W. Taylor
> Elizabeth A. Weaver
> Robert P. Young, Jr.
> Stephen J. Markman

23

STATE OF MICHIGAN

SUPREME COURT

ANN COBLENTZ, LEE COBLENTZ,
JOHN LEWANDOWSKI, and
DEBORAH LEWANDOWKSI,

      Plaintiffs-Appellants,

v                                No.  127715

CITY OF NOVI,

      Defendant-Appellee.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I concur with all parts of the majority opinion except for parts II and VI. While I agree with the result reached by the majority in part VI—that plaintiffs should not have to pay defendant the requested fee—I believe the reason is simply that the failure to charge a fee for searching, examining, and reviewing the side agreements would not result in an unreasonably high cost to defendant.  MCL 15.234(3) states, in relevant part:

> A fee shall not be charged for the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information as provided in section 14 unless failure to charge a fee would result in unreasonably high costs to the public body because of the nature of the request in the particular instance, and the public body specifically identifies the nature of these unreasonably high costs.

Defendant charged $150 for the city attorney to search, examine, and review materials for the requested side agreements.  But the nature of the request

for the side agreements was a routine request under the Freedom of Information Act, MCL 15.231 *et seq*., and complying with the request would not result in an unreasonably high cost to defendant. Therefore, there was nothing about the nature of the request in this particular instance to warrant charging a fee to cover defendant's costs. Accordingly, I concur with all parts of the majority opinion, except for part II and part VI; with regard to part VI, I concur only with the result.

Michael F. Cavanagh

S T A T E   O F   M I C H I G A N

SUPREME COURT

ANN COBLENTZ, LEE COBLENTZ,
JOHN LEWANDOWSKI, and DEBORAH
LEWANDOWSKI,

       Plaintiff-Appellants,

v                                   No.  127715

CITY OF NOVI,

       Defendant-Appellee.

_____

CORRIGAN, J. (*concurring in part and dissenting in part*).

I concur with the majority in all respects but one. I dissent from its holding that the Court of Appeals erred in affirming summary disposition for defendant on plaintiffs' request for the "side letters" to the settlement agreement. I believe that the letters were properly ruled exempt from disclosure under the "trade secrets or commercial or financial information" exemption of the Freedom of Information Act (FOIA), MCL 15.243(1)(f). The trial court did not abuse its discretion in holding that defendant recorded a description of the side letters within a reasonable time after they were submitted. Nor did the trial court err in holding that defendant satisfied the remaining requirements of the exemption.

## I. Facts and Procedural History

Sandstone Associates Limited Partnership-A (Sandstone) sent the two "side letters" at issue to defendant on June 25, 2002, and July 23, 2002.[1]  When plaintiffs first informally requested the side letters on October 16, 2002, defendant's attorney responded on October 21, 2002, by saying that he was waiting for advice from Sandstone's lawyers regarding whether to disclose the side letters because some of them "were submitted with an understanding of confidentiality."  Plaintiffs filed a formal FOIA request for the side letters on November 1, 2002, asking defendant to disclose "[a]ny and all side agreements entered into between the City of Novi and Sandstone and/or its attorneys or representatives[.]"  On November 26, 2002, after negotiating with Sandstone, defendant produced five side letters, but denied plaintiffs' request in regard to

> two documents representing commercial and/or financial information voluntarily submitted to the City of Novi for use in developing governmental policy in connection with the settlement of Oakland County Circuit Court litigation entitled [*Sandstone Associates Limited Partnership-A v City of Novi*, Oakland Circuit Court Docket No. 95-501532-CK], as contemplated and required under MCL 15.243[(1)(f)].

On the same day, defendant recorded and filed with the city clerk descriptions of the two side letters that it had refused to disclose.  Both of these

---

[1] Defendant and Sandstone entered their agreement settling Sandstone's multimillion dollar judgment against defendant on June 25, 2002.  Sandstone dated and sent the first draft of the first side letter to defendant's attorney on the same day.  Sandstone sent a revised version of this letter, along with the other side letter at issue, to defendant on July 23, 2002.

4

side letters had been written by Sandstone and sent to defendant's attorney and marked as confidential. In one letter, Sandstone named the prices it would pay to purchase plaintiffs' (and others') properties, assuming that the properties were free from deed restrictions (Letter 1). In the other letter, Sandstone identified which parcels of property (including plaintiffs') have deed restrictions that give their owners the enforceable right to prohibit commercial use (Letter 2).

Following an in camera review of the two side letters and two affidavits submitted by defendant, the trial court determined that the letters were exempt from disclosure under the "trade secrets or commercial or financial information" exemption of the FOIA:

> The court is satisfied that Defendant complied with each of the three listed requirements of MCL 15.243(1)(f) and thus disclosure of the two side letters would be inappropriate. The court finds that the two letters contain financial or commercial information of Sandstone's voluntarily provided to Defendant by Sandstone in confidence. Further, the letters fall within the policy-making potential contemplated by the Legislature in drafting this exemption to the FOIA. They were intended to facilitate the Settlement Agreement and Consent Judgment and assist Defendant in making the policy decisions with regard to that settlement. The court finds that the content of the letters relates to Defendant's deliberations on the selection of the best government policy for the potential expenditure of substantial sums of money and the retention of land for public use.

The Court of Appeals affirmed, holding that defendant had satisfied all the requirements of the exemption.

5

## II. Analysis

I cannot conclude that the lower courts erred in holding that the two side letters are exempt from disclosure under the "trade secrets or commercial or financial information" exemption. When reviewing the application of an FOIA exemption, an appellate court reviews legal determinations de novo, factual findings for clear error, and discretionary determinations for an abuse of discretion. *Herald Co, Inc v Eastern Michigan Univ Bd of Regents*, ___ Mich ___, ___; ___ NW2d ___ (Docket No. 128263, decided July 19, 2006), slip op at 6-8. The "trade secrets or commercial or financial information" exemption provides:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:
>
>            \*   \*   \*
>
> (f) Trade secrets or commercial or financial information voluntarily provided to an agency *for use in developing governmental policy* if:
>
> (*i*) The information is *submitted upon a promise of confidentiality* by the public body.
>
> (*ii*) The promise of confidentiality is *authorized by the chief administrative officer of the public body or by an elected official* at the time the promise is made.
>
> (*iii*) *A description of the information is recorded by the public body within a reasonable time* after it has been submitted, maintained in a central place within the public body, and made available to a person upon request. This subdivision does not apply to information submitted as required by law or as a condition of receiving a governmental contract, license, or other benefit. [MCL 15.243(1)(f) (emphasis added).]

6

The burden is on the public body to demonstrate that the record is exempt from disclosure. MCL 15.240(4); *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 108; 649 NW2d 383 (2002).

### A. "A description of the information is recorded by the public body within a reasonable time"

What constitutes a "reasonable time" is a discretionary determination, as this Court described in *Federated Publications, Inc, supra* at 106-107. Thus, the trial court's determination is subject to review for an abuse of discretion. *Herald Co, supra*, slip op at 6-8. This Court "cannot disturb the trial court's decision unless it falls outside the principled range of outcomes." *Id.* at 8. The trial court's decision that defendant recorded a description of the side letters within a reasonable time after their submission to defendant, MCL 15.243(1)(f)(*iii*), did fall within the principled range of outcomes.

Even after defendant and Sandstone agreed to settle Sandstone's multimillion dollar judgment against defendant, they continued to negotiate questions regarding deed restrictions on the subject property. Sandstone believed that certain of the seven side letters (including the two letters at issue) had been submitted upon defendant's promise of confidentiality and hence were exempt from disclosure under the FOIA. While defendant agreed that some of the letters had been submitted upon a promise of confidentiality, it kept open the possibility that the letters might not be exempt under the FOIA. Defendant thus negotiated with Sandstone to determine which of the letters might be voluntarily disclosed

7

under the FOIA. These negotiations continued until Sandstone eventually agreed to disclose five of the seven letters on November 26, 2002, the same day that defendant recorded the descriptions and filed them with the city clerk. Defendant did not know whether it was going to assert an FOIA exemption regarding these side letters until its negotiations with Sandstone ended. If defendant had recorded the information contained in all of these letters and asserted the "trade secrets or commercial or financial information" exemption earlier than it did, Sandstone might not have agreed to disclose five of the letters.

The majority's holding that defendant's delay in recording descriptions of the side letters was unreasonable is inconsistent the statutory language. By using the phrase "*reasonable* time," the Legislature made clear that the permissible time period can vary. MCL 15.243(1)(f)(*iii*) does not define what constitutes a "reasonable time." But this Court has defined "reasonable time" as follows: "By reasonable time is to be understood such promptitude as the situation of the parties and the circumstances of the case will allow. It never means an indulgence in unnecessary delay . . . ." *Maley-Thompson & Moffett Co v Thomas Forman Co*, 179 Mich 548, 555; 146 NW 95 (1914). Yet the majority disregards the word "reasonable" in the statute by holding that the circumstances surrounding defendant's recording of the descriptions, including the negotiations between defendant and Sandstone, are "irrelevant," *ante* at 16, and by concluding that the delay was unreasonable because, despite the circumstances, "defendant was still required to comply with the provisions of MCL 15.243(1)(f)," *ante* at 17. The

8

majority holds that defendant was required to record descriptions earlier than it did "[h]owever inconvenient the recording requirement may have been to defendant and Sandstone," *ante* at 17, and despite "whether defendant could later secure Sandstone's permission to release the side letters," *ante* at 18. In so holding, the majority consciously shifts the focus away from whether defendant's actions were *reasonable in this case*. To say, as the majority does, that the negotiations between defendant and Sandstone are irrelevant is to say that defendant was required to record the descriptions of the side letters within a certain unspecified time regardless of what time was reasonable under the circumstances. This is contrary to the text of the statute.

The majority holds that the negotiations between defendant and Sandstone were irrelevant to the statutory obligation to record descriptions of the side letters within a reasonable time because the statutory exemption's recording requirement is intended to provide notice to the public. In support of this holding, the majority states that plaintiffs would never have discovered the existence of the side letters if they had not accidentally happened on a reference to the side letters.[2] The majority's reasoning appears to be based on the faulty assumption that defendant never recorded the descriptions of the side letters. Defendant *did* give plaintiffs notice of the side letters when it recorded the descriptions on November 26, 2002.

---

[2] Plaintiffs learned of the side letters upon examining a nonfinal draft of the agreement that was voluntarily disclosed by defendant.

9

Thus, plaintiffs would have received notice within a reasonable time that defendant possessed the side letters even if plaintiffs had not discovered the letters before defendant recorded the descriptions. Further, the statute does not create a race between the requesting party and the public body. That plaintiffs discovered the existence of the side letters before defendant recorded the descriptions does not necessarily mean that defendant did not record the descriptions within a reasonable time. I do not question that the public body must record the descriptions and give notice to the public in order to comply with MCL 15.243(1)(f)(*iii*). But the issue is not whether defendant gave notice that it possessed the side letters before plaintiffs discovered the side letters, but whether defendant gave notice *within a reasonable time* that it possessed the side letters. This case does not involve the situation cited by the majority in which the "requesting party [is required to] seek disclosure of a document of which it was unaware." *Ante* at 18.

The majority believes that the four-month delay was unreasonable simply because it was too long. The majority effectively holds that whether the public body met the requirements of MCL 15.243(1)(f)(*iii*) depends only on the length of time the public body takes to record a description of the information, rather than whether that amount of time was reasonable under the circumstances. If the Legislature had not intended for the time to vary with the circumstances, it would have imposed a definite time limitation on the public body recording the

10

description, rather than stating that the description must be recorded within a reasonable time.

Additionally, after having recited the appropriate standard of review, the majority nonetheless engages in a review de novo. Given the unusual situation presented by these facts, in which defendant waited to record the descriptions until negotiations regarding disclosure had concluded, the trial court accorded leeway in the recording process to defendant. There is good reason behind the abuse of discretion standard we articulated in *Herald Co, supra*, slip op at 6-8. The trial court is given the discretion to determine what amount of time is reasonable precisely so that it may take into account the public body's recording of the description in each case and examine why the recording took the amount of time it did under the circumstances. Allowing the trial court the discretion to determine what amount of time is reasonable under the circumstances does not defeat the purpose of the recording requirements of the statute. Both the trial court and the Court of Appeals held that defendant recorded the description of the side letters within a reasonable time. This reasoned outcome accounts for defendant's decision to record the descriptions after the conclusion of successful negotiations between defendant and Sandstone. The trial court's determination fell within the principled range of outcomes. *Id.* at 8. The trial did not abuse its discretion in determining that defendant recorded descriptions of the information within a reasonable time after they were submitted.

11

B.  "Submitted upon a promise of confidentiality"

In one of the side letters (Letter 1), Sandstone stated that "[t]he terms of this letter are confidential under all respects, not subject to disclosure and would not be covered by any FOIA request."  The other side letter (Letter 2) was submitted with and related to Letter 1.  Thus, Sandstone expressly stated that the letters were confidential.  But to satisfy the exemption, the information must be submitted upon a promise of confidentiality *by the public body*.  Defendant satisfied this requirement by offering the unrebutted affidavit of Ronald Hughes, the Sandstone partner who had signed the side letters.  Hughes stated that defendant promised to keep the letters confidential before Sandstone sent them to defendant.  He averred that the letters "were expressly submitted and conditioned on their confidentiality contemporaneous with their execution . . . ."  Plaintiffs failed to offer any evidence in rebuttal.  In light of Hughes's uncontested affidavit, the trial court did not err in finding no genuine issue of material fact that the letters were submitted upon defendant's promise of confidentiality.

C.  "Authorized by the chief administrative officer of the public
body or by an elected official"

Hughes also stated in his affidavit that "Sandstone understood that the promise of confidentiality was both known and authorized by the Mayor and City Manager, at the time of the letters['] execution, and Sandstone would not have submitted the letters absent such a promise of confidentiality from the City of Novi."  As noted, plaintiffs failed to rebut this affidavit.  Thus, the trial court did

12

not err in finding no genuine issue of material fact that the chief administrative officer or an elected official had promised confidentiality.

## D. "For use in developing governmental policy"

Finally, I agree with the lower courts that the two side letters at issue contain financial or commercial information that was "for use in developing governmental policy." MCL 15.143(1)(f). The FOIA does not define "governmental policy." This Court has never interpreted this phrase in the context of the FOIA. Further, courts in other jurisdictions interpreting their own FOIAs have never defined this phrase.[3] It is thus difficult to form a precise definition of "governmental policy." Governments claim authority and responsibility over large groups of individuals, and the methods they employ to decide how to carry out their numerous functions vary widely. Nonetheless, this Court has defined "policy" in the employment contract context as "'a definite course or method of action selected (as by a government, institution, group, or individual) from among alternatives and in the light of given conditions to guide and usu[ally] determine present and future decisions; . . . a projected program

---

[3] Other jurisdictions have interpreted their own versions of the "trade secrets or commercial or financial information" exemption. None of these jurisdictions has statutes that include the "governmental policy" language found in Michigan's exemption. For example, numerous federal courts have interpreted the federal FOIA provision that exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]" 5 USC 552(b)(4). But the federal exemption does not require that the information be provided "for use in developing governmental policy."

13

consisting of desired objectives and the means to achieve them . . . .'" *In re Certified Question (Bankey v Storer Broadcasing Co)*, 432 Mich 438, 455-456; 443 NW2d 112 (1989), quoting *Webster's Third New International Dictionary, Unabridged Edition* (1964); see also Silberman, Chevron—*The intersection of law & policy*, 58 Geo Wash L R 821, 822 (1990) (offering a similar definition).[4] This definition applies equally to the term "policy" in the FOIA exemption at issue, and I would adopt it here. I emphasize that this definition does not encompass every decision regarding a course of action made by a governmental entity. Obviously, governmental bodies adopt many courses of action that do not guide present or future decisions. Such decisions may be categorized as

---

[4] I distinguish the phrase "governmental policy" from the phrase "public policy" because these phrases are generally used to convey different meanings. In *Terrien v Zwit*, 467 Mich 56, 68 n 13; 648 NW2d 602 (2002), this Court declined to define "public policy," but held that "public policy is defined by reference to the laws actually enacted into policy by the public and its representatives." As the Court observed in *Skutt v Grand Rapids*, 275 Mich 258, 264; 266 NW 344 (1936), quoting *Pittsburgh, C, C & St L R Co v Kinney*, 95 Ohio St 64; 115 NE 505 (1918):

> "What is the meaning of 'public policy?' A correct definition, at once concise and comprehensive, of the words 'public policy', has not yet been formulated by our courts. . . . In substance, it may be said to be the community common sense and common conscience, extended and applied throughout the State to matters of public morals, public health, public safety, public welfare and the like. It is that general and well-settled public opinion relating to man's plain, palpable duty to his fellow men, having due regard to all the circumstances of each particular relation and situation."

Thus, "public policy" is used as a *basis* for governmental decisions, rather than being a "course or method of action" for making present or future decisions.

"operational" decisions rather than "policy" decisions. Operational decisions concern routine, everyday matters and do not require evaluation of broad policy factors. See *Rogers v State*, 51 Hawaii 293, 296-298; 459 P2d 378 (1969) (interpreting a "discretionary function" exception to governmental immunity). Operational decisions may also be characterized as "the execution or implementation of previously formulated policy." *Hanson v Vigo Co Bd of Comm'rs*, 659 NE2d 1123, 1126 (Ind App, 1996) (also interpreting a "discretionary function" exception to governmental immunity).[5]

---

[5] In interpreting the "discretionary function" exception to its governmental immunity statute, the Arizona Court of Appeals offered contrasting examples of operational, as opposed to policy, decisions:

> By way of illustration, a decision by the district board to construct a playground at a school and allocate funds for that purpose would be a policy decision protected by immunity. Deciding what specific pieces of equipment to have on the playground would not be a policy decision, but rather would be an operational level decision. *See, e.g.*, *Warrington v. Tempe Elementary Sch. Dist.*, [187 Ariz 249, 252; 928 P2d 673 (Ariz App, 1996)] (school district's decision regarding placement of bus stop is an operational level decision); *Evenstad* [*v State*], 178 Ariz. [578] at 582-84, 875 P.2d [811] at 815-17 (App. 1993) (issuance of driver's license by MVD is an operational level decision; prescribing rules for issuance is making of policy); *Rogers v. State*, 51 Haw. 293, 296-98, 459 P.2d 378, 381 (Haw. 1969) (operational level acts concern routine, everyday matters, not requiring evaluation of broad policy factors; operational acts include kinds of road signs to place and which center line stripes to repaint); *Stevenson v. State Dept. of Transp.*, 290 Or. 3, 9-12, 619 P.2d 247, 251-52 (Or. 1980) (decision to build a highway rather than a railroad track is exercise of governmental discretion or policy judgment entitled to immunity; planning and design of the road does not involve use of discretion in the sense that a policy decision is required). [*Schabel v Deer Valley*

(continued…)

15

Although the Court of Appeals correctly ruled that the side letters were provided to defendant for use in developing governmental policy, the panel's reasoning in reaching this conclusion was faulty. The panel stated that "[t]he information in the side letters clearly concerned public policy" because "[i]t related to how defendant intended to settle the Sandstone litigation, a situation with the potential to bankrupt defendant and seriously affect its residents." *Coblentz v Novi,* 264 Mich App 450, 458; 691 NW2d 22 (2004). The agreement was of overarching importance to defendant and the development of defendant's policy because it settled the Sandstone judgment against defendant, which could have bankrupted defendant and affected its residents by causing budget cuts and tax increases or assessments against each resident. Nonetheless, because the side letters were sent *after* defendant entered into the agreement with Sandstone, they did not affect whether defendant entered into the agreement, and accordingly did

---

(…continued)
> *Unified School Dist No 97*, 186 Ariz 161, 166; 920 P2d 41 (Ariz App, 1996).]

See also *Gutbrod v Hennepin Co*, 529 NW2d 720, 723 (Minn App, 1995) (citations omitted) ("Planning level decisions . . . involve questions of public policy and the balancing of competing policy objectives. . . . [O]perational level decisions relate 'to the ordinary day-to-day operations of the government' and involve the exercise of scientific or professional judgment.").

I recognize that the FOIA exemption at issue is worded differently than, and applied differently from, the governmental immunity statutes in these cases. Nonetheless, I find persuasive the analyses of "policy" versus "operational" in these cases in interpreting what constitutes "policy" within the meaning of Michigan's "trade secrets or commercial or financial information" exemption.

not affect whether defendant went bankrupt. The letters did not alter or void the agreement if defendant was unable to clear the deed restrictions or convince plaintiffs to sell their properties. Because the agreement had already settled the Sandstone judgment when the side letters were sent, the danger of this judgment causing defendant to go bankrupt had abated. Thus, the side letters were not provided to defendant for use in developing its policy to discharge the Sandstone judgment and avoid bankruptcy.

Nonetheless, defendant did use the side letters in developing governmental policy. The agreement expressly provided that defendant would forfeit additional public land (either 4.8 or 9.6 acres at Sandstone's option) if it failed to purchase plaintiffs' properties or otherwise clear the deed restrictions on the properties. Thus, the agreement demonstrates that before the side letters were sent, defendant had already made the policy decision that it would agree either to find a way to remove the deed restrictions on plaintiffs' property or to relinquish additional parkland. But at the time defendant entered the agreement, it had not yet decided which of these two alternatives it would choose. The agreement itself contained no policy to assist in this decision. Because the decision whether to remove the deed restrictions or forfeit additional parkland was not a routine decision that merely required application of policy developed in the agreement, defendant had a remaining policy decision to make after it entered into the agreement. That defendant had already agreed on the two alternatives before the side letters were

17

sent did not alter defendant's need to develop policy in order to choose between these two alternatives.

The side letters confirm the deed restrictions on the properties and the amount Sandstone would pay defendant for plaintiffs' properties once they were free from restrictions.  By offering in the letters to advance all or part of the money to defendant to purchase plaintiffs' properties, Sandstone sought to influence defendant's decision whether to purchase plaintiffs' properties, pay plaintiffs to waive the right to enforce their deed restrictions, or forfeit additional public land to Sandstone.  Because disclosure of the letters would reveal to plaintiffs the amount Sandstone was willing to pay for their properties, it would also affect defendant's ability to purchase plaintiffs' properties.  Defendant's decision regarding whether to attempt to purchase plaintiffs' properties or try to lift the deed restrictions on the properties not only directly affected plaintiffs individually, but it also affected the residents of the city because it determined whether defendant would be forced to forfeit several acres of property set aside for public use.  If defendant decided to purchase plaintiffs' properties, it would result in large expenditures of public funds, which would affect defendant's budget and its residents.  On the other hand, if defendant was unable to lift the deed restrictions or decided not to purchase plaintiffs' properties, defendant

would forfeit additional public property to Sandstone. The loss of this additional land would affect all of defendant's residents.[6]

Regardless of defendant's ultimate decision, the information in the side letters was provided for use in guiding defendant's management of public affairs. The letters affected a budgetary decision concerning allocation and substantial expenditure of public funds to retain public land. Thus, the letters were provided to defendant to develop a course of action that would materially affect the future of its citizens. The letters did not involve a mere operational decision regarding a routine matter for which a policy was already in place. Defendant's decision on how to deliver its governmental functions within its budget obviously constituted a policy decision. Thus, the Court of Appeals did not err in holding that that the side letters contained financial or commercial information provided to defendant for use in developing governmental policy.

### III. Conclusion

I dissent from the majority's conclusion that plaintiffs were entitled to disclosure of the side letters. In my opinion, the trial court did not abuse its discretion in determining that defendant recorded descriptions of the side letters within a reasonable time after they were submitted. Because defendants met all of

---

[6] Thus, this case is distinguishable from *Herald Co, Inc v Tax Tribunal*, 258 Mich App 78, 85; 669 NW2d 862 (2003), in which the Court of Appeals held that the "trade secrets or commercial or financial information" exemption did not apply because the *single* individual tax determination "lack[ed] the policy-making potential contemplated by the Legislature in drafting this exemption to the FOIA."

the other requirements of the "trade secrets or commercial or financial information" exemption of the FOIA, the side letters were exempt from disclosure.

Maura D. Corrigan