OPINION AND ORDER DENYING DEFENDANTS MOTION FOR SUMMARY DISPOSITION

WILSON D. BROTT, Chief Judge.
This complex case involves an appeal by each of the Plaintiffs following their having been disenrolled by the Defendants (hereinafter “Defendants” or “The Tribe”). The disenrollment of each Plaintiff is based upon a determination made by the Tribe that each Plaintiff lacks a sufficient blood quantum for enrollment. Plaintiffs are each descendents of members of the Grand Traverse Band of Ottawa and Chippewa Indians. Defendants allege that the Plaintiffs do not meet the membership requirements under the Constitution of the Grand Traverse Band of Ottawa and Chippewa Indians (hereinafter “Constitution”), Article II, Section l(b)(2)a., which specifies that “Descendents of members are eligible for enrollment as members if they are of at least one-fourth (⅜) Indian blood, of which at least one-eighth (⅛) must be Michigan Ottawa and/or Chippewa blood.” (Emphasis added); see also 7 GTBC § 4.01. Plaintiffs contend that they meet this blood quantum requirement.

MOTION FOR SUMMARY DISPOSITION STANDARD

Defendants brought their motion for summary disposition pursuant to GTBCR 4.116(0(10). A motion under GTBCR 4.116(0(10) should be granted when “except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law.” GTBCR 4.116(G)(4) states that:
A motion under subrule (0(10) must specifically identify the Issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (0(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rale, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.
A motion under GTBCR 4.116(0(10) tests the factual sufficiency of the complaint. See Maiden v. Rozwood, 461 Mich. 109, 120, 597 N.W.2d 817 (1999). In evaluating a motion for summary dispo *176 sition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, GTBCR 4.116(G)(5), in the light most favorable to the party opposing the motion. Maiden, supra. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. GTBCR 4.116(0(10), (G)(4). See Quinto v. Cross & Peters Co., 451 Mich. 358, 547 N.W.2d 314 (1996).
The moving party has the initial burden to “specifically identify the issues as to which [it] believes there is no genuine issue” of material fact. See Coblentz v. Novi, 475 Mich. 558, 569, 719 N.W.2d 73 (2006), quoting MCR 2.116(G)(4). In response to a motion for summary disposition, the opposing party cannot rest on the complaint. Id. Instead, the opposing party must offer “[ajffidavits, pleadings, depositions, admissions, or other documentary evidence” to survive summary disposition. Id. “Evidence offered in support of or in opposition to the motion can be considered only to the extent that it is substantively admissible.” See GTBCR 4.116(G)(6). “Speculation and conjecture are insufficient to create an issue of material fact.” See Ghaffari v. Turner Const. Co. (On Remand), 268 Mich.App. 460, 464-465, 708 N.W.2d 448 (2005). The trial court may not make factual findings or weigh credibility when deciding a motion for summary disposition. Arbelius v. Poletti, 188 Mich.App. 14, 18, 469 N.W.2d 436 (1991). All inferences are to be drawn in favor of the nonmovant. Id. “[W]hen the truth of a material factual assertion depends on a determination of credibility, a genuine factual issue exists and summary disposition may not be granted.” Id. at 18-19, 469 N.W.2d 436. The court should evaluate a motion for summary disposition under GTBCR 4.116(0(10) by considering the substantively admissible evidence actually proffered in opposition to the motion. Maiden, supra, at 121, 597 N.W.2d 817. A court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. Id. A mere promise is insufficient under our court rules. Id. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. Fletcher v. GTB Tribal Council, Case No. 03-05-448-CV, - Am. Tribal Law -, 2004 WL 5714967 Order Regarding Defendants' Motions For Summary Disposition, January 8, 2004, at p.

TRIBAL COURT AUTHORITY RELATING TO MEMBERSHIP ISSUES

Membership within the Tribe is governed by Article II of the Constitution, and by the Tribal Enrollment Ordinance, which is Title 7 of the Grand Traverse Band Tribal Code. The Tribal Court’s authority with respect to membership and enrollment issues stems first from the Constitution, Article II, Section 4, which states:
Section 4. Right of Appeal. Any person whose application for membership has been denied, who has been disen-rolled by the Tribal Council, or whose membership has been deemed to be automatically forfeited shall have a right of appeal to the Tribal Judiciary; provided that such appeal rights do not extend to any person whose petition for membership by adoption into the Tribe has been denied.
The Tribal Enrollment Ordinance also provides that all appeals of decisions of the Membership Department Manager and/or Tribal Council shall be heard by the Tribal Court (excluding applications for adop *177 tion). See 7 GTBC § 9.01 and § 9.04. The applicant appealing a decision of either the Tribal Council or Membership Department Manager shall bear the burden of proof on appeal. 7 GTBC § 9.03. Parties may submit any additional supporting evidence or documents which were not previously furnished to the Tribal Council and may include a copy of or reference to applicable Tribal records or record of the Bureau of Indian Affairs which relate to the applicant’s eligibility for enrollment under § 4 of this ordinance or their Degree of Indian Blood (DIB) as referenced in § 2.01(e). 7 GTBC § 9.05. The Tribal Court shall permit all parties to examine records submitted on appeal and to provide testimony or other evidence that would support or refute the application for membership or continuance of membership. 7 GTBC § 9.06. The sole issues on appeal will be to determine if the Tribal Council or Membership Department Manager made an error in rejecting an application for enrollment, disenrolling the applicant, or wrongfully changing their DIB. 7 GTBC § 9.07. The burden of proof shall remain with the individual affected by the decision of the Tribal Council. Id. A disenrollment shall not be effective until the final disposition of the Tribal Court appeal. 7 GTBC § 9.08.

FACTUAL ISSUES

The factual issues in this case are broad and varied. To give context to this opinion, the Court will attempt to summarize the issues raised in the parties’ briefs and their respective positions.

A. Degree of Indian Blood (DIB)

At issue in this case is whether Plaintiffs qualify to be members of the Tribe pursuant to the provision of the Constitution and the Tribal Enrollment Ordinance. The Constitution provides that membership can be established by being a base roll member [Article II, Section 1(b)(1), discussed further below], by being a future member or descendent [Article II, Section 1(b)(2)], or by adoption (not discussed in this opinion) [Article II, Section 1(b)(3) and (4) ]. The Tribal Enrollment Ordinance, being Title 7 of the Grand Traverse Band Tribal Code also governs membership and enrollment issues. Article II, Section 1(b)(2) provides the following:
(2) Future Members.
a. Descendants. Descendants of members are eligible for enrollment as members if they are of at least one-fourth (¾) Indian blood, of which at least one-eighth (⅝) must be Michigan Ottawa and/or Chippewa blood.
b. Additions other than descendants. Individuals other than descendants are eligible for enrollment if either of the following conditions are satisfied:
(i) They are listed on the November 1, 1985 roll, in the future become residents within the five-county area of Antrim, Benzie, Grand Traverse, Leelanau, and Manistee, and also can demonstrate, by other means, substantial community ties to the Band. Application under this provision must be made within five (5) years of the effective date of adoption of this Constitution.
(ii) They are not listed on the November 1, 1985 roll, but are among the 297 petitioners listed in the Grand Traverse Band Petition for Federal Acknowledgment, who were then determined to meet the Band’s membership criteria, unless they have relinquished their membership in writing. These individuals must also trace to the historic Grand Traverse Bands, must have been born in or be a resident within the five counties of Antrim, Benzie, *178 Grand Traverse, Leelanau, and Manistee, and be at least one-quarter (⅜) Michigan Ottawa and/or Chippewa blood.
Degree of Indian Blood (DIB) is very important as it affects the determination to enroll or disenroll members of the Tribe; individuals who possess the required DIB as outlined in 7 GTBC S 4 shall be eligible for membership with the Tribe. 7 GTBC § 3.02. Membership in the Tribe is further defined in part by the Tribal Enrollment Ordinance:
4.01. Membership in the Tribe shall consist of the following:
(a) Base Roll Membership:
(1) All persons whose names appear on the approved Base Roll of the Tribe.
(b) Future Membership:
(1) Enrolled members of the Band on the effective date of the approved Constitution who met the eligibility criteria contained therein.
(2) Direct lineal descendants of Tribal members on the Base Roll who possess at least one-fourth (¾) Indian descent [DIB as defined in this ordinance], of which at least one-eighth (⅜) must be traced to the Michigan Ottawa and/or Chippewa who are listed on the Durant Roll; or
Unfortunately, the phrase “Degree of Indian Blood” is given two potentially inconsistent definitions within the Tribal Enrollment Ordinance. First, 7 GTBC § 2.01(e) states: “Degree of Indian Blood (DIB)—The total blood quantum derived from the Tribes, Bands or Groups recognized by the Federal Government of the United States of America, and by the Durant Roll as defined below [1].’ (Emphasis added). However, 7 GTBC § 3.01 states: “Degree of Indian Blood (DIB) Defined— The total blood quantum derived from the Tribes, Bands or Groups recognized by the Federal Government of the Untied States of America as established by the determination process of a certificate of degree of Indian blood, 65 FR 20775-01 (April I, 2000)[2].” (Emphasis added).
The dispute in this case centers on the blood quantum of Plaintiffs’ ancestors. Each Plaintiffs degree of Indian blood (DIB) is derived from that of their common ancestor Evelyn (Chippewa) Felice. Evelyn Felice was the daughter of Eliza Jane (Raphael) Chippewa, granddaughter of Louise [Louisa] (Anewishki[3]) Raphael, great granddaughter of Elizabeth [Eliza] (Newhouse) Anewishki, and great-great granddaughter of Mary (Bourassa) New-house and possibly John Newhouse.
It is contended by Defendants that Elizabeth (Newhouse) Anewishki and Mary Ann (Chippewa) Newhouse were both daughters of Mary Newhouse and John Newhouse. Defendants contend that John Newhouse is not Indian, rather that he was of French descent, born in Corsica (off the coast of Italy), and therefore the DIB *179 of each of the descendente is necessarily less than % Indian. Plaintiffs dispute this claim that John Newhouse is the father of Elizabeth Anewishki based in part upon inconsistent census records as well as their family’s oral history.
Defendants further contend that Evelyn Felice’s DIB determination w?as reduced by the Bureau of Indian affairs from ¾ to ⅞. As a result of that determination, her children’s DIB determinations were reduced from ⅛ to ¾«, and the Plaintiffs DIB determinations were reduced to %¾ fc shy of the required ¾ DIB required for membership under the Constitution. As a result, Plaintiffs have been disenrolled by the Tribe.
Plaintiffs contend that the disenrollment is improper and that they meet the ⅜ DIB blood quantum requirement. As stated above, Plaintiffs dispute the allegation that John Newhouse is the father of Elizabeth Anewishki. Plaintiffs also contend that Louise (Anewishki) Raphael, daughter of Elizabeth Anewishki, is in faet ⅜ Indian as indicated in census records, the Durant Roll [via Eliza Jane (Raphael) Chippewa, Louise’s daughter], oral testimony of Evelyn Felice given in 2002, and through their expert, Dr. James McClurken. Plaintiffs further contend that they are descended from Eliza Jane (Chippewa) Raphael, who is identified on the Durant Roll without any indication of being of mixed blood, and therefore is presumed to be ¾ Indian. Plaintiffs also dispute Defendant’s contention that there is no evidence to believe that Mary Bourassa (wife of John New-house) wras Indian.

B. Base Roll

Also in dispute is the significance of the “base roll” and determinations of blood quantum that flow from that determination. Pursuant to the Tribal Constitution, “base roll membership” is defined in Article II, Section 1(b)(1) as:
(1) Base roll membership. Base roll membership, as defined by the following:
a. All individuals who were enrolled as members of the Band on November 1, 1985, as well as all those who had applied for membership by November 1, 1985 and met the membership requirements then in existence, AND w7ho were residents as of that date within the six-county area of Antrim, Benzie, Charlevoix, Grand Traverse, Leelanau, and Manistee, and
b. All individuals who were enrolled as members of the Band on November 1, 1985, as wTell as all those wdio had applied for membership by November 1, 1985 and met the membership requirements then in existence, AND who were residents as of that date outside of the six-county area of An-trim, Benzie, Charlevoix, Grand Traverse, Leelanau, and Manistee who either:
(i) Were born in the five-county area of Antrim, Benzie, Grand Traverse, Leelanau, and Manistee, traee to members of the historic Grand Traverse Bands listed on the Durant Roll, and are at least one-fourth (⅛) Michigan Ottawa and/or Chippewa blood, or
(ii) Are, by blood, the brother, sister or parent of someone on the base roll, as established by b(( )a and b(( )b above, and trace to members of the historic Grand Traverse Bands who are listed on the Durant Roll, or
(iii) Are of at least one-fourth (⅜) blood of the historic Grand Traverse Bands, or
(iv) Are descendants of persons enrolled under any Section above; *180 provided that they are of at least one-fourth (⅛) Indian blood, of which at least one-eight (⅛) must be Michigan Ottawa and/or Chippewa blood.
“Base roll membership” is also defined in the Tribal Enrollment Ordinance, specifically 7 GTBC § 201(c), as follows:
(c) Base Roll—-The term “Base Roll” is used in the federal tribal enrollment context to mean the official Tribal enrollment roll that contains the Bureau of Indian Affair’s determined degree of Indian blood from which degrees of Indian blood are arithmetically established for all GTB Tribal members. The degree of Indian blood in the Base Roll can only be changed by the Federal Government. The Base Roll that was approved by the Secretary of the Interior on September 22, 1988, and defined as a listing of all individuals who were enrolled as members of the Band on November 1, 1985, as well as those who had applied for membership by the aforementioned date, met the membership requirements then in existence, and who also met the criteria contained in Article II, § 1(b) of the Constitution, approved by the Secretary of the Interior on March 29, 1988.
The Defendants argue that Plaintiff Gregory Rizzo and Catherine Cholewka’s names were not on the base roll that was certified and approved by the Bureau of Indian Affairs (BIA) in September 1988, as they were determined to have a degree of Indian blood (DIB) of ⅛ (fe> shy of the required ⅛). It appears that both Gregory Rizzo and Catherine Cholewka had been on the initial base roll as ¾ Indian, but were crossed off the roll by the BIA after the DIB was reduced to ⅞ prior to the base roll having been adopted and certified.
Plaintiffs contend that they were not notified of the change of DIB by the BIA or the Tribe, and thus that they were never afforded the opportunity to challenge that determination. Further, Plaintiffs Gregory Rizzo and Catherine Cho-lewka argue that they should have been enrolled in 1984 as they were included in the initial membership roll submitted to the BIA, and that they received a “Certificate of Reinstatement” dated August 1, 1996, without any reference to them having been disenrolled between 1984 and 1996.
C. Inconsistencies between Census Records and Duran t Roll
Plaintiff further states in opposition to the motion for summary disposition that there are significant inconsistencies between the census records that relate to the Plaintiffs’ ancestors and whether or not they were deemed by the Federal government to be Indian. Plaintiffs allege that the 1880 Leelanau County Federal Population Census lists Mary Ann (Chippewa) Newhouse as Indian, and Eliza Anewishki as “White.” However, the 1894 Leelanau County State Census lists Eliza as Indian, and Louisa as Indian. The 1900 Leelanau County Federal Population lists Mary Ann as Indian and Louisa as Indian, and under Special Inquiries Relating to Indians it states that Louisa has no white blood. Plaintiffs further point out that Eliza Jane (Raphael) Chippewa is identified on the Durant roll as Indian without any indication of being of mixed blood, which Mary Ann (Newhouse) Chippewa, who is related but not a direct ancestor of the Plaintiffs, is specifically identified on non-Indian in the Durant Roll field notes.
As stated above, also at issue is whether John Newhouse is the biological father of Elizabeth [Eliza] (Newhouse) Anewishki. Plaintiffs argue that their family’s oral history is that John Newhouse was not Elizabeth Anewishki’s father. As further evi- *181 denee of this, Plaintiffs point to the fact that John Newhouse is listed as merely a “boarder” on the 1894 census roll.
Finally, there is an issue of the legal significance of Eliza Jane (Raphael) Chippewa being listed as Indian on the Durant Roll without any qualification as being less than ⅜ Indian. 7 GTBC § 4.07 is entitled “Rules of Decisions and Evidentiary Standards.” Subsection 4.07(a) states:
Durant Roll of 1908—Presumption of ¾ Indian blood quantum—Where there is no other information within the Durant Roll of 1908 and its included supplemental information indicating blood quantum other than of the Tribe or band identified, the person is presumed to be ¾ blood quantum of that Tribe or band.
Thus, there is a presumption that a person listed on the Durant Roll is ¾ Indian unless there is other information within the Durant Roll or its supplemental information to indicate otherwise. Presumptions, however, are rebuttable. Black’s Law Dictionary, 7th Ed., p. 1203, defines a presumption as:
A legal inference or assumption that a fact exists, based on the knowm or proven existence of some other fact or group of facts. ⅜ Most presumptions are rales of evidence calling for a certain result in a given case unless the adversely affected party overcomes it with other evidence. A presumption shifts the burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption.
The Defendants are clearly arguing that the evidence concerning Plaintiffs ancestry rebuts the presumption created by 7 GTBC § 4.07(a) as it relates to Eliza Jane (Raphael) Chippewa’s DIB.

D. Enrollment Resulting From. Tribal Council Action of 1996

Further complicating these matters is a resolution adopted by the Tribal Council in 1996 which resulted in the Plaintiffs being enrolled as members of the Tribe. On June 26, 1996, the Tribal Council adopted a resolution which found that Louise Anewishki was % degree Indian blood, thus making each of the Plaintiffs ¼ Indian. The resolution provided that the decision amounted to a specific reversal of the Secretary of Interior’s determination of DIB. The Tribal Council has apparently reversed their position taken in 1996, having approved the disenrollment of the Plaintiffs on the basis of a lack of sufficient DIB required for membership. The rationale indicated is that the Tribal Council lacked authority to change the DIB determined by the BIA.
The Plaintiffs argue that the Tribal Council determination of DIB as to Louise Anewishki being ¾ degree Indian blood should be considered res judicata, and that the Defendants cannot now change the DIB determinations that flow from that decision.

E. Failure to Time Requirements to Respond to Disenrollment Notice

Finally, the Cholew?ka Plaintiffs allege that they were not afforded 30 days to respond to the letter of intent to disenroll, and that they were disenrolled before their time period to respond had run. Defendants have not responded to this allegation.

DECISION AND ORDER

The purpose of a motion for summary disposition pursuant to GTBCR 4.116(0(10), as stated above, is to test the factual sufficiency of a Plaintiffs claim. The Court has carefully reviewed the many documents submitted by both parties, including census records, “expert” reports, affidavits, letters, and other docu *182 mentation. Much of the evidence is contradictory and conflicting.
While Defendants argue that their motion for summary dispositions places the burden upon Plaintiffs to prove that their DIB meets the membership requirements, this is not the burden required under GTBCR 4.116(0(10). Instead of requiring absolute proof of their claim, the court rule requires that the Plaintiffs prove that there is a genuine issue of material fact that affects the outcome of the case. Taking the evidence in the light most favorable to the Plaintiffs as the Court is required to do, this Court finds that the Plaintiffs have produced evidence which goes beyond mere speculation and which suggests that the Plaintiffs may possess the necessary DIB for membership required under the Constitution and Tribal Enrollment Ordinance. Whether Plaintiffs will ultimately prevail in this case remains to be seen.
While the burden of proving membership will remain squarely upon the Plaintiffs at trial, the Court finds that to make a determination against the Plaintiffs would require the Court to make factual determinations and weigh credibility which also necessarily requires the Court to deny the motion for summary disposition under GTBCR 4.116(0(10). In other words, The Court finds that there are sufficient issues of material fact such that it would be improper to grant the Defendants’ motion and deny the Plaintiffs of their opportunity to present testimony and documentary evi-denee to support their claims for membership.
In addition, the provisions of 7 GTBC § 9.05[4] and § 9.06[5], permit the parties to submit additional supporting evidence, including the taking of testimony and review of any documentation supporting either party’s position. Despite the provisions these statutes allowing for presentation of evidence, the Court could still grant summary disposition pursuant to GTBCR 4.116(0(10) if the circumstances warranted. However, the evidence presented thus far to the Court in support of and in opposition to the motion for summary disposition convinces the Court that there are genuine issues of fact to be decided by the Court after a full and fair hearing on the merits.
Finally, the Court rejects the notion that this Court and the Tribe are totally powerless to change DIB determinations that my ultimately affect the base roll membership. This Court does not believe the Tribe Enrollment Ordinance evidences an intent to totally hand over all authority to the federal government to make adjustments to the base roll membership determinations. Clearly there are provisions within the Tribal Enrollment Ordinance which provide deference to the federal government’s DIB determinations, and seek their input and approval when Tribal Council seeks to change them. See 7 GTBC § 3.04(a). However, the very existence of these provisions alone indicate and anticipate that there is a mechanism and circumstance whereby such determinations could be *183 changed by the Tribe in conjunction with the federal government.
IT IS THEREFORE ORDERED that the Defendants’ Motion for Summary Disposition is hereby DENIED.

. 7 GTBC § 2.01(e) defines the Durant Roll as follows: “Durant Roll—The federal census payment roll completed by Horace Durant in 1908, as approved by the Secretary of Interior on February 18, 1910, and as clarified by Durant’s corresponding field notes.”

. 65 FR 20775-01 refers to Proposed Rules of the Department of Interior, Bureau of Indian Affairs, proposed 25 CFR Part 70, dated April 18, 2000. It does not appear that these rules have ever been formally adopted by the Department of Interior.

.The Court is utilizing the spelling ''Anew-ishki'' for the purposes of this opinion as referred to in the Plaintiffs' briefs. The Court would note that there are several alternate spellings for this family name referred to in the supporting documentation (i.e. Anewsky, Aniwisky, Enewisky, etc.).

. 7 GTBC § 9.05 reads: "Parties may submit any additional supporting evidence or documents which were not previously furnished to the Tribal Council and may include a copy or reference to applicable Tribal records or record of the Bureau of" Indian Affairs which relate to the applicant’s eligibility for enrollment under § 4 of this ordinance or the-"- DIB as referenced in § 2.01(e)."

. 7 GTBC § 9.06 reads in pertinent part: "The Tribal Court shall permit all parties to examine records submitted on appeal and to provide testimony or other evidence that would support or refute the application for membership or continuation of membership