MARQUETTE GENERAL HOSPITAL, INC v CHOSA

Docket No. 285697. Submitted May 12, 2009, at Marquette. Decided May
    26, 2009, at 9:05 a.m.

Marquette General Hospital, Inc., brought an action in the Baraga
    Circuit Court against Bryan K. Chosa and Baraga County, seeking
    payment for in-patient medical services provided at Marquette
    General Hospital to Chosa at a time when he was a Baraga County
    Jail inmate. The court, Garfield W. Hood, J., granted summary
    disposition for the defendants, ruling that the plaintiff had failed
    to meet the requirements of MCL 801.4 when seeking payment
    from the county. The plaintiff appealed.

    The Court of Appeals *held*:

    1. Under MCL 801.4(1), all charges and expenses of safekeep-
ing and maintaining county jail inmates charged with an offense
are to be paid from the county treasury. MCL 801.4(2) requires a
provider of health care to a county jail inmate to make a reason-
able effort to determine whether the inmate is covered by a health
care policy, certificate of insurance, or other source of payment for
medical expenses. If the health care provider determines that the
inmate is a Medicaid recipient or a beneficiary of any health care
policy, certificate of insurance, or other source of payment, the
health care provider must first seek reimbursement from that
source before submitting a bill to the county. When submitting an
invoice to a county for the payment of medical expenses, a health
care provider must also submit a statement that the provider has
made a reasonable effort to determine whether the inmate was
covered by a health care policy, certificate of insurance, or other
source of payment for medical expenses.

    2. In this case, the plaintiff failed to meet the statutory
requirement of submitting a statement that it had made a reason-
able effort to secure payment from third parties such as Medicaid
and the Indian Health Service before submitting a bill to Baraga
County. Nevertheless, the record evidence indicates that the
plaintiff attempted to collect from those third parties, and MCL
801.4 does not provide a sanction for the plaintiff's noncompliance
with the statement requirement. Accordingly, dismissal of the
action with prejudice was improper and contrary to the longstand-

ing public policy of placing ultimate responsibility for the cost of maintaining jail inmates on the county.

Affirmed in part, reversed in part, and remanded.

COUNTIES — JAILS — PROVIDERS OF HEALTH CARE TO JAIL INMATES — COUNTY REIMBURSEMENT FOR JAIL INMATES' HEALTH CARE.

 A provider of health care to a county jail inmate, when billing a county for the cost of such care, is required by a statute to provide a statement that the provider has made a reasonable effort to determine whether the inmate was covered by a health care policy, certificate of insurance, or other source of payment; the statute, however, provides no sanction for noncompliance (MCL 801.4[2]).

*Randolph B. Osstyn* for Marquette General Hospital, Inc.

*Joseph P. O'Leary*, Prosecuting Attorney, for Baraga County.

Before: WHITBECK, P.J., and DAVIS and GLEICHER, JJ.

DAVIS, J. Plaintiff, Marquette General Hospital, Inc. (the Hospital), appeals as of right the Baraga Circuit Court's order granting summary disposition in favor of defendants. At issue is defendant Baraga County's liability for the cost of medical services provided by the Hospital to defendant Bryan Keith Chosa, who was an inmate at the Baraga County Jail at the time. Although the general legal principles involved were well-established by statute in the earliest days of Michigan's statehood, this case presents an issue of first impression regarding a procedural requirement added to the statute by the Legislature in 2006. We reverse and remand.

The general facts in this case are simple and undisputed. On July 15, 2006, Chosa was admitted at the Hospital for in-patient medical services. The record does not specify precisely what those services were. But from reading the medical billing summary, several cop-

ies of which are found in the lower court record, it is clear that the services related to cardiac problems. Furthermore, his admission was apparently an emergency, and counsel for Baraga County would later tell the trial court that "we actually [had] to modify a bond at one point to get [Chosa] out of jail because of precisely the type of issues that brought us here." Chosa was, in any event, discharged on July 19, 2006, and was returned to the Baraga County Jail.

The medical bill for Chosa's care came to $31,305.42, and an account for that sum was stated between the parties. Miki Wipfli, the Hospital's business office manager stated in an affidavit that the only medical coverage that it was aware of at the time was "ABW Medicaid or Adult Medical Program," which only covered outpatient services and therefore would not apply to Chosa's in-patient services. He further stated that, after verifying the accuracy of that belief, the Hospital informed the Baraga Department of Human Services on August 7, 2006, that Chosa was not eligible for Medicaid. On August 16, 2006, the Hospital sent a bill to the Baraga County Jail.

According to a copy of an Application Eligibility Notice from the Michigan Family Independence Agency, Chosa applied for state assistance—specifically, disability and Medicaid—on August 23, 2006. On September 26, 2006, Baraga Undersheriff Bob Teddy wrote a letter to the Hospital stating his assumption that the Hospital had already explored Medicaid eligibility and advising the Hospital for the first time that Chosa was a member of the Keweenaw Bay Indian Community and possibly eligible for medical services through the Indian Health Service. Teddy also wrote that "MCL 801.4 mandates that you explore this source of payment as well as any other possible sources of payment before resubmitting

you [sic] invoice to my Office." Wipfli stated in his affidavit that the Hospital did not receive Teddy's letter until October 23, 2006.[1] He further stated that this was the first time the Hospital was made aware that Chosa might be eligible for Indian health care.

Wipfli stated that the Hospital "accordingly" billed the Keweenaw Bay Indian Community's Health Association on October 4, 2006.[2] On January 29, 2007, the Keweenaw Bay Indian Tribal Health Fund sent a letter to the Hospital denying payment because "[a]pproval was not obtained from an IHS authorizing official within 72 hours following receipt of this EMERGENCY SERVICE." In the meantime, on November 8, 2006, the Family Independence Agency denied disability and Medicaid to Chosa because he was "not disabled per MRT." (The record does not disclose what the acronym stands for.) Wipfli's affidavit states that various individuals employed by Baraga County were apprised of the ongoing attempts to obtain payment for Chosa. Those communications appear to be the only items of material fact in dispute, although given that those communications were apparently only verbal, it is additionally disputed whether they are even relevant under the applicable statute.

The instant suit was commenced on January 18, 2008, in the general posture of bill collection. Baraga

---

[1] This date is almost certainly a typographical error. The copy of Undersheriff Teddy's letter that is included in the record, although a poor copy, appears to have been stamped as "received" on October 3 of an unreadable year, presumably 2006.

[2] We note the contradiction in Wipfli's statement that the Hospital sent a bill on October 4, 2006, based on a communication received on October 23, 2006. Baraga County contends that Wipfli's affidavit is, at best, so poorly drafted that it should be disregarded. However, we consider the evidence in the record before us, and as to this particular incongruity, see note 1.

County admitted that the medical services were rendered, that an account stated for $31,305.42 existed between the parties, and that, as a *general* statutory matter, defendant Baraga County is responsible for the payment of that money for Chosa's medical services. MCL 801.4(1). Baraga County contends, however, that the Hospital failed to comply with certain statutory prerequisites to payment.

Under MCL 801.4(1), with some listed exceptions, "all charges and expenses of safekeeping and maintaining prisoners and persons charged with an offense[ ] shall be paid from the county treasury, the accounts therefor being first settled and allowed by the county board of commissioners." The substance of MCL 801.4(1) has *literally always* been "on the books" in Michigan, a substantially identical provision being found in the 1838 Rev Stat, part 4, tit 2, ch 10, § 3; later found in the 1846 Rev Stat, ch 171, § 4. Other than the more recent insertion by the Legislature of the mentioned exceptions, counsel for Baraga County accurately conceded that, traditionally, "it's always been done this way."

The exceptions to MCL 801.4(1) are at issue in this case. 2006 PA 20 added subsection 2, which became effective on February 9, 2006—approximately five months before the medical services were rendered in this case. Specifically, MCL 801.4(2) provides:

> If medical care or treatment is provided to an individual described in subsection (1), the health care provider shall make a reasonable effort to determine whether that individual is covered by a health care policy, a certificate of insurance, or other source for the payment of medical expenses. If the county sheriff who has custody over the individual is aware that the individual is covered by any health care policy, certificate of insurance, or other source of payment, the sheriff shall provide that information to

the health care provider. If the health care provider determines that the individual, at the time of admission or treatment, is a medicaid recipient or a beneficiary of any health care policy, certificate of insurance, or other source for the payment of some or all of those expenses, the health care provider shall first seek reimbursement from that source, subject to the terms and conditions of the applicable health care policy, certificate of insurance, or medicaid contract, before submitting those expenses to the county. When submitting an invoice to the county for the payment of medical expenses under this section, a health care provider shall provide a statement that the health care provider has made a reasonable effort to determine whether the individual was covered by a health care policy, certificate of insurance, or other source for the payment of medical expenses. A county may enter into agreements with health care providers to establish procedures for the submission of invoices for medical expenses under this section and the payment of those invoices.

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Coblentz v City of Novi*, 475 Mich 558, 567-568; 719 NW2d 73 (2006). This Court likewise reviews de novo questions of statutory construction, with the fundamental goal of giving effect to the intent of the Legislature. *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175 (2003), amended on other grounds 468 Mich 1216 (2003).

In summary, the facts in this case show that: (1) the Hospital attempted to obtain payments for Chosa's medical care from a variety of third-party sources, including Medicaid, before billing Baraga County; (2) Baraga County was aware that Indian health care might be available but did not inform the Hospital of this until at least 69 days after Chosa's treatment; and (3) the only "statement" or "statements" made by the Hospital to Baraga County regarding the efforts it undertook to acquire third-party payment were verbal.

Baraga County contends, and the trial court agreed, that the Hospital failed to comply with the requirements of MCL 801.4(2) by failing to make reasonable efforts to locate and seek payments from third parties and by failing to submit with its invoice the requisite statement detailing those efforts. We disagree.

Baraga County contends that the Hospital did not make reasonable efforts to secure alternative payment almost entirely because the Hospital did not seek payment from the Keweenaw Bay Indian Community. Baraga County contends that the Hospital should have known about the possibility of Indian health care for Chosa, but it provides no evidence in support of this assertion beyond the somewhat bizarre request for this Court to "take judicial notice of the fact that Plaintiff-appellant routinely bills the Keweenaw Bay Indian Community (KBIC) for reimbursement for medical services provided to tribal members." Baraga County apparently bases its assertion on the additional contention that "while it may not be politically correct to say so[,] it is objectively true that Mr. Chosa's appearance in no way disguises his Native American heritage." The Hospital, more reasonably, points out that Baraga County is effectively urging this Court to adopt a policy of acting on assumptions based on physical appearance. In any event, the record evidence shows that Baraga County was aware of Chosa's heritage and that Baraga County informed the Hospital of this in a letter dated September 26, 2006. The record contains no evidence whatsoever that the Hospital knew or should have known anything about Chosa's heritage earlier than that date.

In contrast, the evidence shows that Baraga County *was* aware of a possible source of payment based on Chosa's heritage. We note that MCL 801.4(2) places an

affirmative obligation on the county sheriff to inform the health care provider if the county sheriff is aware of any possible source of payment—which apparently did not take place until Undersheriff Teddy's letter. In short, if the untimely disclosure of Chosa's heritage and the lost opportunity for Indian health care coverage could be asserted as a violation of MCL 801.4(2), which could excuse payment, the evidence in the record shows only that Baraga County violated a duty thereunder, not the Hospital.[3] It appears that the Hospital did undertake reasonable efforts to secure third party payment from known possible sources before billing Baraga County.

The evidence does show that the Hospital did not provide a statement that the health care provider has made a reasonable effort when it submitted an invoice to the county for the payment of medical expenses. We agree with the Hospital's observation that nothing in MCL 801.4(2) *explicitly* states that the "statement" must be in writing. However, the statutory requirement that the statement be provided with the invoice, and reasonable business practice, leads to only one rational conclusion: that the statement must be in the same format and effectively in the same "package" as the invoice. Because it borders on being inconceivable that the invoice would *not* be in writing, the statement must also be in writing. Therefore, unless the parties avail themselves of the option of arranging an alternative billing procedure, we conclude that the statement of efforts by the medical provider must be documented and included with the invoice. A mere verbal statement, unless the invoice is the same, is insufficient.

---

[3] There is some suggestion that not even the sheriff knew about Chosa's heritage until the time of the letter, in which case Baraga County might not have violated its obligations under the statute, but the assertion that the Hospital should have known would be even less reasonable.

Finally, while we concede the trial court's conclusion that the Hospital did not satisfy the statutory prerequisites of a written "statement" in support of its invoice for payment, we disagree with the trial court's resolution of the case. The statute does not provide a sanction for noncompliance. The Legislature's purpose in amending the statute was to clearly place responsibility on medical providers to seek alternative sources of payment and to assure the county that such efforts have been undertaken; it was not to provide a technicality by which the county may evade payment for legitimate medical services rendered if an alternative source of payment does not exist. The only implied consequence of noncompliance, therefore, is that Baraga County is not yet obligated to pay the bill for Chosa's medical care. We have not been advised of any time limitation within which the Hospital must file the required statement. In fact Undersheriff Teddy's letter explicitly invited the Hospital to resubmit its invoice. We conclude that dismissal with prejudice was improper and contrary to the longstanding and still important public policy of placing ultimate responsibility for the cost of maintaining persons in county custody on the county. The Hospital may yet fulfill the requirements of MCL 801.4(2) by resubmitting an invoice with the proper statement.

We affirm the trial court's finding that the Hospital failed to comply with MCL 801.4(2) on the limited basis of the Hospital's failure to provide a written statement with its invoice. We reverse the trial court's grant of summary disposition with prejudice, and we remand for proceedings consistent with this opinion as the trial court may deem appropriate and necessary. We do not retain jurisdiction. No costs, a public question being involved.