*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY HJERSTEDT,

　　　　　Plaintiff-Appellant,

v

CITY OF SAULT STE. MARIE,

　　　　　Defendant-Appellee.

FOR PUBLICATION
February 21, 2023
9:05 a.m.

No. 358803
Chippewa Circuit Court
LC No. 20-016126-CZ

Before: PATEL, P.J., and BORRELLO and SHAPIRO, JJ.

PATEL, P.J.

George Floyd's death in May 2020 prompted citizens to advocate for systemic change in law enforcement across the country. The mass movement included inquiries into use-of-force policies implemented by police departments in each state. Weeks after Floyd's death, Amy Hjerstedt requested a copy of the Sault Ste. Marie Police Department's use-of-force policy pursuant to Michigan's Freedom of Information Act ("FOIA"), MCL 15.231 *et seq.* The city denied the request, claiming the policy was exempt from disclosure. Hjerstedt appealed the denial. The city commission voted to disclose a redacted copy of the policy based on a number of statutory exemptions. Hjerstedt initiated this FOIA action challenging the city's decision. The trial court granted summary disposition in favor of the city and dismissed Hjerstedt's complaint, concluding that the unredacted policy was exempt from disclosure because it (1) was a record of law enforcement communication codes or plans for deployment, MCL 15.243(1)(n); (2) disclosed law enforcement operational instructions, MCL 15.243(s)(*v*); (3) would endanger the safety of law enforcement officers, MCL 15.243(s)(*vii*); and (4) the public's interest in disclosure did not outweigh the public's interest in nondisclosure.

Michigan has a strong public policy favoring public access to government information. Consistent with this policy, FOIA provides that "all persons . . . are entitled to full and complete information regarding the affairs of government" and mandates disclosure to keep the citizens informed "so that they may fully participate in the democratic process." MCL 15.231(2). Although certain information may be exempt from disclosure, the statutory exemptions are not intended to shield public bodies from the transparency that FOIA was designed to foster. We find that the trial court erred by concluding that the unredacted policy was exempt from disclosure

under MCL 15.243(1)(n), (s)(*v*), and (s)(*vii*). Accordingly, we reverse the court's grant of the city's motion for summary disposition pursuant to MCR2.116(C)(10) and remand for further proceedings.

## I. FACTUAL BACKGROUND

On June 25, 2020, Hjerstedt submitted a FOIA request to the city seeking the "Sault Police use of force policy/standard." The city denied Hjerstedt's request, claiming that the policy was exempt from disclosure under MCL 15.243(1)(n) because "it would prejudice the city's ability to protect the public safety." Hjerstedt appealed the denial,[1] asserting that MCL 15.243(1)(n) was misinterpreted because the use-of-force policy "does not include deployment plans or communication codes." The appeal was submitted to the city commission for consideration.

The city's staff, including the city attorney and city manager, provided the city commission with an analysis and a recommendation to disclose the use-of-force policy with redactions. The staff maintained that the policy was part of the "general orders and policies for various basic operations" of the police department and included

> information, if made public, would inform individuals with criminal threat intent or resistance when and how an officer would use his or her training and the limitations therein in order to eliminate the threat or overcome the resistance presented. This information would allow the opportunity for a subject to overpower an officer's efforts to eliminate the threat or resistance, placing the officer and/or innocent citizen in jeopardy of severe injury or death.

The staff contended that the policy was exempt from disclosure because it (1) was an investigating record that would endanger the safety of law enforcement officers if disclosed, MCL 15.243(1)(b)(*vi*); (2) was a record of law enforcement communication codes or plans for deployment, MCL 15.243(1)(n); (3) disclosed law enforcement operational instructions, MCL 15.243(s)(*v*); (4) revealed the contents of law enforcement staff manuals, MCL 15.243(s)(*vi*); and (5) would endanger the safety of law enforcement officers if disclosed, MCL 15.243(s)(*vii*). But "given the social climate around Force of Use [sic] policies," the staff recommended releasing information that would not place the officers' safety in jeopardy. The city commission voted to release a redacted version of the policy. Hjerstedt received a heavily redacted copy of the policy.[2]

Hjerstedt initiated this FOIA action challenging the decision. The city moved for summary disposition pursuant to MCR 2.116(C)(7) and (10), arguing that the redacted information was exempt from disclosure under MCL 15.243(1)(n), (s)(*v*), (s)(*vi*), and (s)(*vii*) and necessary "for the public and/or officer safety." The city relied on affidavits from the city's current and former police chiefs who claimed that the disclosure of the information

---

[1] Although Hjerstedt's initial FOIA request does not reflect it, her FOIA appeal indicates that her request was made on behalf of the League of Women Voters of Eastern Upper Peninsula.

[2] The copy released to Hjerstedt included significant redactions in the sections pertaining to use-of-force considerations as well as the escalation and de-escalation of force.

would or could impact safety of the public and/or officers because it would inform individuals with criminal intent or those who resist know [sic] when and how an officer would use his or her training to respond and the limitations posed in order to eliminate the threat or to overcome the resistance presented.

7. The information if disclosed would or could impact safety of the public and/or officers because it would inform individuals with criminal intent or those who resist also know the factors that are important for the officer to consider in making a decision how to respond.

8. Armed with this information a potential suspect could circumvent the officer's actions thus placing both the suspect and officer in danger.

In response, Hjerstedt requested judgment as a matter of law under MCR 2.116(I)(2). She also filed a cross-motion for summary disposition pursuant to MCR 2.116(C)(9) and (10). She described the police chiefs' affidavits as "conclusory," "self-serving opinions" that did not actually "address the purported exemptions." She relied on unredacted use-of-force policies from the Michigan State Police, Department of Homeland Security, Michigan Association of Chiefs of Police, Lake County Sheriff Department, and Newaygo County Sheriff's Department that were available to the public online. Hjerstedt posited that the other departments' unredacted policies were nearly identical to the unredacted portions of the city's policy. Because anyone could access unredacted copies of the other departments' policies, she asserted that the city's argument that disclosure of an unredacted copy of its policy would arm persons with information to circumvent officers' actions was meritless. Hjerstedt argued that the exemptions claimed by the city were inapplicable and that the public's interest warranted disclosure.

The city's police chief, Wesley Bierling, testified that he believed the redactions were necessary to protect the safety of officers and the public. Chief Bierling was not the city's police chief at the time that the redactions were made, and he was not the decision maker with regard to Hjerstedt's FOIA request. But he maintained that he would have made the same redactions. Consistent with his affidavit, Chief Bierling testified that the redacted information "could or would impact the safety of [the] officers and [the] public" because it could provide information on how the officers "may use force, may consider using force, or may react to certain situations, and what they would use in their decision-making process." He was not concerned about what other municipalities did with their policies, stating that it was "not an apples-to-apples comparison." He testified that when he makes a decision to redact public records, he "always err[s] on the side of caution" in order to ensure officer safety.

In addition to the evidence and testimony presented by the parties, the trial court reviewed an unredacted copy of the city's use-of-force policy *in camera*. The court found that the redacted portion of the policy involved "tactics and techniques or operational guidelines and according to the affidavit of former City Police Chief, John Riley, disclosure of the information would impact the public and/or officer safety because it would use his or her training to respond and the limitations posed in order to eliminate the threat or to overcome the resistance presented." The court noted that the former chief's decision was supported by Chief Bierling. The court found "that the [d]isclosure of the unredacted Use of Force Policy would or could in fact impact the officer's [sic] ability to protect the public and/or themselves. The safety of the Sault Ste. Marie

Police Officers' safety [sic] is paramount and consequently the public interest is outweighed in the disclosure of said policy." The trial court granted the city's motion for summary disposition and dismissed Hjerstedt's complaint, concluding that the city's decision to redact the policy fit within the exemptions set forth in MCL 15.243(1)(n), (s)(*v*), and (s)(*vii*).[3] Hjerstedt now challenges the trial court's ruling.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). In this case, the trial court did not expressly indicate whether it granted the city's motion under MCR 2.116(C)(7) or (10), but because it considered affidavits and testimony beyond the pleadings, we can fairly surmise that the motion was granted under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270, 826 NW2d 519 (2012). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 113; 923 NW2d 607 (2018). We consider all evidence submitted by the parties in the light most favorable to the non-moving party. *El-Khalil*, 504 Mich at 160. Summary disposition under MCR 2.116(C)(10) is only appropriate when there is no genuine issue of material fact. *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).

The interpretation and application of a statute is a question of law that we review de novo. *Boyle v Gen Motors Corp*, 468 Mich 226, 229; 661 NW2d 557 (2003). We likewise review "de novo whether the trial court properly interpreted and applied the FOIA." *Mich Open Carry, Inc v Dep't of State Police*, 330 Mich App 614, 621; 950 NW2d 484 (2019). The court's factual findings underlying its application of FOIA are reviewed for clear error. *Id.* "Clear error exists only when the appellate court is left with the definite and firm conviction that a mistake has been made." *Herald Com Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471; 719 NW2d 19 (2006) (cleaned up). "[C]ertain FOIA provisions require the trial court to balance competing interests." *Id.* at 470. When we review "a decision committed to the trial court's discretion, such as the balancing test at issue in [FOIA] case[s], we "must review the discretionary determination for an abuse of discretion and cannot disturb the trial court's decision unless it falls outside the principled range of outcomes." *Id.* at 472.

## III. ANALYSIS

Hjerstedt argues that the trial court erred in granting summary disposition in favor of the city because none of the statutory exemptions were applicable. We agree.

Michigan's FOIA grants the public an opportunity to "examine and review the workings of government and its executive officials." *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 641; 591 NW2d 393 (1998). FOIA commands that persons "are entitled to full and complete

---

[3] Although the city also cited MCL 15.243(1)(s)(*vi*) in its motion for summary disposition, the court did not rely on this statutory exemption in reaching its decision.

information regarding the affairs of government and the official acts of those who represent them as public officials and public employees . . . so that they may fully participate in the democratic process." MCL 15.231(2). Consistent with this policy, FOIA provides, in pertinent part, that "[e]xcept as expressly provided in [MCL 15.243], upon providing a public body's FOIA coordinator with a written request that describes a public record sufficiently to enable the public body to find the public record, a person has a right to inspect, copy, or receive copies of the requested public record of the public body." MCL 15.233(1). FOIA has been described repeatedly by our Supreme Court as a "prodisclosure statute." *Sole v Michigan Economic Development Corp*, 509 Mich 406, 413; __ NW2d__ (2022); *Herald Co v Bay City*, 463 Mich 111,119; 614 NW2d 873 (2000); *Swickard v Wayne Co Med Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991).

MCL 15.243 exempts certain information from disclosure. The public body has the burden of proving the applicability of any statutory exemption that it claims applies to a FOIA request. *Detroit Free Press, Inc v Southfield*, 269 Mich App 275, 281; 713 NW2d 28 (2005). "To meet this burden, the public body claiming an exemption should provide complete particularized justification, rather than simply repeat statutory language." *Detroit Free Press v Warren*, 250 Mich App 164, 167; 645 NW2d 71 (2002). But FOIA's exemptions "must be narrowly construed to serve the policy of open access to public records." *Mich Open Carry,* 330 Mich App at 625.

In this case, the trial court found that the redacted material was exempted from disclosure under MCL 15.243(1)(n), (s)(*v*), and (s)(*vii*). Resolution of this matter requires us to interpret these statutory exemptions. "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). When determining the meaning of a statute's plain language, we examine "the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017). Accordingly, these exemptions should be construed in accordance with FOIA's stated purpose of supplying "full and complete information regarding the affairs of government" to interested citizens. MCL 15.231(2). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz & Cohn LLP v City of Detroit,* 505 Mich 284, 294; 952 NW2d 358 (2020) (cleaned up).

## A. MCL 15.243(1)(n)

First, the trial court found that the redacted material was exempted from disclosure under MCL 15.243(1)(n), which exempts "[r]ecords of law enforcement communication codes, or plans for deployment of law enforcement personnel, that if disclosed would prejudice a public body's ability to protect the public safety unless the public interest in disclosure under this act outweighs the public interest in nondisclosure in the particular instance."[4] The trial court failed to articulate any factual findings that the redacted portions of the policy were either communication codes or

---

[4] Because Hjerstedt failed to address this statutory exemption in her brief on appeal, we are not required to address the merits. *MOSES, Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006). But our de novo review necessarily includes this issue.

plans for deployment. The city has not asserted that the redacted portion of the policy contains communication codes, and our review of the policy does not reveal any communication codes. Accordingly, we will limit our review to whether the redacted portion contains "plans for deployment of law enforcement personnel."

As commonly understood, the phrase "deployment of [] personnel" means sending personnel to address a particularized threat or situation. For example, in the context of military deployment, units of the military are sent to specific locations to address and fulfill specific mission requirements. The same is true for law enforcement personnel. Deployment of law enforcement personnel can be to address a specific threat, such as responding to the scene of a vehicle crash or active shooter situation, or a specific mission, such as manning a DUI checkpoint. But the common thread is sending, i.e. deploying, law enforcement personnel somewhere to address a specific issue.

Construing these terms to serve FOIA's policy of open access to public records, *Mich Open Carry,* 330 Mich App at 625, "plans for deployment of law enforcement personnel" refers to a procedure for placing or arranging law enforcement personnel in a position for a particular use or purpose. For example, in the event of civil unrest in a community, a law enforcement agency may have a plan for deployment that includes when and where law enforcement personnel will be sent and how they will respond. Use-of-force policies do not outline specific deployments of law enforcement personnel to specific locations or particularized threats.

We find that a general, department-wide policy regarding various factors for officers to consider in deciding whether force should be used and, if so, the type of force to be used, is far too general to be considered a "plan for deployment." The trial court's implicit finding that the redacted material contained communication codes or plans for deployment of law enforcement personnel was clear error. Because we find that the redacted portions of the policy do not contain communication codes or plans for deployment, it is unnecessary for us to consider the balancing test set forth in MCL 15.243(1)(n).

B. MCL 15.243(s)(*v*)

Next, the trial court found that the redacted material was exempted under MCL 15.243(s)(*v*), which exempts "operational instructions for law enforcement officers or agents" from disclosure "[u]nless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance[.]" FOIA does not define "operational instructions," and there is no caselaw interpreting this subparagraph. The trial court's conclusion that this exemption applied was conclusory, it did not include any factual support, and it did not include an analysis of "operational instructions." Hjerstedt argues that "[o]perational instructions or manuals prescribe items such as uniforms, car operations, evidence handling, weapons deployment and use, firearm handling and safety or procedure for arrests, searches, and seizures." The city argues that " 'operational instructions' are 'approved standard procedures for performing operations safely.' "

The phrase "operational instructions," means instructions relating to operations. The critical inquiry, then, is whether the use-of-force policy contains instructions relating to operations. We hold that there is a conceptual difference between policy and operations, and that the use-of-force policy in this case deals with policy, only, and does not contain any "operational instructions." The policy, thus, was not exempt from disclosure.

Our Supreme Court, albeit in the employment context, recognized that a "policy" is "a definite course or method of action selected (as by a government, institution, group, or individual) from among alternatives and in the light of given conditions to guide and usu[ally] determine present and future decisions; . . . a projected program consisting of desired objectives and the means to achieve them  . . . ." *In re Certified Question*, 432 Mich 438, 455–456; 443 NW2d 112 (1989) (cleaned up).  The Supreme Court echoed this definition recently in *Johnson v Vanderkooi*, 502 Mich 751, 763–64; 918 NW2d 785 (2018) when examining the constitutionality of Grand Rapids Police Department "photograph and print" policy: "An 'official policy' often refers to formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time."  *Id.* (cleaned up). Operational instructions, on the other hand, deal with how policy is implemented in specific circumstances.

Justice Corrigan, in her partial concurring opinion in *Coblentz v City of Novi*, 475 Mich 558; 719 NW2d 73 (2006) (CORRIGAN, J., concurring in part and dissenting in part), examined the distinction between policy and operational decisions.  We find her analysis persuasive and adopt it here.  After acknowledging the definition of policy in *In re Certified Question*, she reasoned that the definition should apply equally in FOIA cases.[5]  But she emphasized "that this definition does not encompass every decision regarding a course of action made by a governmental entity." *Id. at* 593.  "[G]overnmental bodies adopt many courses of action that do not guide present or future decisions.  Such decisions may be categorized as 'operational' decisions rather than 'policy' decisions.  Operational decisions concern routine, everyday matters and do not require evaluation of broad policy factors." *Id*.  "Operational decisions may also be characterized as 'the execution or implementation of previously formulated policy.' " *Id.,* quoting *Hanson v Vigo Co Bd of Comm'rs,* 659 NE2d 1123, 1126 (Ind App, 1996).  Justice Corrigan also cited to the Arizona Court of Appeals, which offered this insightful analysis of contrasting examples of operational versus policy decisions:

> By way of illustration, a decision by the district board to construct a playground at a school and allocate funds for that purpose would be a policy decision . . . . Deciding what specific pieces of equipment to have on the playground would not be a policy decision, but rather would be an operational level decision.  See, e.g., *Warrington v Tempe Elementary Sch Dist*, [187 Ariz 249, 252; 928 P2d 673 (Ariz App, 1996) ] (school district's decision regarding placement of bus stop is an operational level decision); *Evenstad [v State]*, 178 Ariz [578] at 582–84; 875 P2d [811] at 815–17 (App 1993) (issuance of driver's license by MVD is an operational level decision; prescribing rules for issuance is making of policy); *Rogers v State*, 51 Haw 293, 296–98[;] 459 P2d 378, 381 (Haw 1969) (operational level acts concern routine, everyday matters, not requiring evaluation of broad policy factors;

---

[5] *Coblentz* dealt with MCL 15.243(1)(f), which exempts from FOIA disclosure "[t]rade secrets or commercial or financial information voluntarily provided to an agency for use in developing governmental policy" if certain requirements are met.  Justice Corrigan's analysis focused on the meaning of "governmental policy" in this subsection.  While this case deals with subsection s(*v*), the analysis of policy versus operational decisions is still germane.

operational acts include kinds of road signs to place and which center line stripes to repaint); *Stevenson v State Dept of Transp*, 290 Or 3, 9–12[;] 619 P2d 247, 251–52 (Or 1980) (decision to build a highway rather than a railroad track is exercise of governmental discretion or policy judgment entitled to immunity; planning and design of the road does not involve use of discretion in the sense that a policy decision is required). [*Id*. at 593 n 5, quoting *Schabel v. Deer Valley Unified School Dist. No. 97*, 186 Ariz. 161, 166; 920 P2d 41 (Ariz App, 1996).]

The use-of-force policy in this case deals with policy, not operations. The term "operational instructions" would specifically exclude "courses of action that . . . guide present or future decisions." *Id*. at 592-593. The use-of-force policy is clearly intended to guide the police in making future decisions pertaining to when the use of force is appropriate and the degree of force that may be appropriate. The policy does not give instructions on use of force in specific situations, but rather outlines broad policy prescriptions that should guide law enforcement personnel when engaging in use of force. The policy therefore does not contain "operational instructions" and is not exempt from disclosure.

The trial court's implicit finding that the redacted material contained operational instructions was clear error. Because we find that the redacted portions of the policy are not operational instructions, it is unnecessary for us to consider the balancing test set forth in MCL 15.243(1)(s)(*v*).

## C. MCL 15.243(s)(*vii*)

Finally, the trial court found that the redacted material was exempted under MCL 15.243(s)(*vii*), which exempts from disclosure law enforcement agency records, "the release of which would . . . [e]ndanger the life or safety of law enforcement officers" except in particular circumstances where "the public interest in disclosure outweighs the public interest in nondisclosure . . . ." The city submitted affidavits from former Chief Riley and current Chief Bierling, both of whom speculated that disclosure of the unredacted portions of the policy "would *or could* impact safety of the public and/or officers" and "a potential suspect *could* circumvent [an] officer's actions thus placing . . . [the] officer in danger." (Emphasis added). But MCL 15.243(1)(s)(*vii*) requires a finding that the release *would* endanger public safety, not that it would *or could*.

Our Supreme Court discussed the distinction between "would" and "could" in *Evening News Ass'n v Troy*, 417 Mich 481, 505-506; 339 NW2d 421 (1983). The Court found that there was a clear distinction between (1) the tentative opinion that an investigation "[c]ould indeed well be jeopardized" by providing the information requested, and (2) the positive conclusion that providing the information "would interfere" with the investigation. *Id*. While *Evening News* involved the application of MCL 15.243(1)(b)(*i*), not MCL 15.243(1)(s)(*vii*), the exemption required a positive conclusion that something *would* happen, just as in this case.[6] "Could" and

---

[6] MCL 15.243(1)(b)(*i*) exempts from disclosure public records that were "compiled for law enforcement purposes, but only to the extent that disclosure as a public record *would* . . . [i]nterfere with law enforcement proceedings." (Emphasis added).

"would" are "obviously not the same thing." *Id*. at 506. Former Chief Riley and current Chief Bierling's speculative statements in their affidavits that endangerment "would or could" occur are tentative opinions. Because MCL 15.243(1)(s)(*vii*) requires a positive conclusion, these tentative opinions are insufficient to meet the city's burden.

In addition to the affidavits, Chief Bierling testified that the redactions were necessary to protect the safety of the public and police officers. Once again, he speculated that the redacted information "could or would" impact the safety of the officers and the public because it could provide information on how the officers "may use force, may consider using force, or may react to certain situations, and what they would use in their decision-making process." Chief Bierling's testimony that the redacted information "would or could" impact officer safety is a tentative opinion, not a positive conclusion. Chief Bierling also testified that release of the unredacted policy would presumably make his staff "nervous" because they would feel as though they did not "have an edge." Chief Bierling's assumption that the release of information would make officers nervous is a far cry from establishing that it would endanger them. Chief Bierling further testified that he "always err[s] on the side of caution" in order to ensure officer safety when making a decision to redact public records. But erring on the side of caution contradicts the mandates of FOIA, which is a "prodisclosure statute." *Sole*, 509 Mich at 413; *Herald*, 463 Mich at 119; *Swickard*, 438 Mich at 544.

The trial court also failed to make a positive finding. The court found "that the [d]isclosure of the unredacted Use of Force Policy would *or could* in fact impact the officer's [sic] ability to protect the public and/or themselves." (Emphasis added). This is not the positive finding required by MCL 15.243(1)(s)(*vii*).

Moreover, the city failed to identify any evidence to support former Chief Riley and Chief Bierling's speculative testimony that the disclosure "would or could" potentially endanger the officers. It was the city's burden to produce particularized evidence that disclosure would endanger law enforcement personnel. See *Evening News*, 417 Mich at 501-502, 503. Former Chief Riley and Chief Bierling's speculative opinion testimony is based on the tenuous claim that "potential suspects" could study the redacted portions of the policy and, somehow, circumvent an officer's use-of-force, which would allegedly aid the suspect in resisting arrest. The city failed to present factual evidence that this scenario was certain to occur. As discussed previously, numerous other jurisdictions (even those that routinely perform joint operations with the city's police department) have opted to make their use-of-force policies easily available to the public via the internet. Given this easy and widespread exposure, and the similarity in subject matter discussed, it is telling that the city could not produce any particularized evidence that the availability of these policies has resulted in endangerment of the life or safety of law enforcement officers, their families, or the general public. Chief Riley and Chief Bierling's speculative affidavits are insufficient to establish the necessary proof. The city has failed to present factual evidence to establish that the public's knowledge of the redacted portions of the policy would endanger the officers.

The trial court clearly erred by finding that the redacted material "would *or could* in fact impact the officer's [sic] ability to protect the public and/or themselves." Because we find that the city failed to meet its burden to prove that officer endangerment necessarily "would" result from

disclosure of the unredacted policy, it is unnecessary for us to consider the balancing test set forth in MCL 15.243(1)(s)(*vii*).[7]

## IV. CONCLUSION

The trial court clearly erred by finding that the unredacted policy was exempt from disclosure under MCL 15.243(1)(n), (s)(*v*), and (s)(*vii*). We reverse the trial court's grant of summary disposition in favor of the city, and we remand for entry of judgment in favor of Hjerstedt. On remand the trial court shall: (1) order disclosure of the unredacted use-of-force policy; (2) award Hjerstedt the reasonable attorneys' fees, costs, and disbursements under MCL 15.240(6); and (3) determine whether Hjerstedt is entitled to punitive damages under MCL 15.240(7).

Reversed and remanded for further proceeding consistent with this opinion. We do not retain jurisdiction. Hjerstedt, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Sima G. Patel
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro

---

[7] The city also claims that the redacted material is exempt from disclosure under MCL 15.243(1)(s)(*vi*). But the trial court clearly rejected this argument because it only found that the material was exempt from disclosure under MCL 15.243(1)(n), (s)(*v*), and (s)(*vii*), and the city did not file a cross-appeal. Notwithstanding, we find no merit in the city's argument.